772 F.2d 565
 1986 A.M.C. 1296
 SEATTLE-FIRST NATIONAL BANK, Trustee, a national banking
association, Plaintiff-Appellee,
v.
BLUEWATER PARTNERSHIP, et al., Defendants,
and
Pacific Fishermen, Inc., a Washington corporation,
Defendant-Appellant.
SEATTLE-FIRST NATIONAL BANK, Trustee, a national banking
association, Plaintiff-Appellee,
v.
BLUEWATER PARTNERSHIP, et al., Defendants,
and
Ballard Oil Company, Inc.; The Boatyard, Inc.; and Lunde
Electric Company, Inc., Defendants-Appellants.
 Nos. 84-3893, 84-4055.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 3, 1985.
Decided Sept. 24, 1985.
 
 James P. Walsh, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for plaintiff-appellee.
 Michael R. Caryl, Seattle, Wash., for defendant-appellant.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, PREGERSON, and ALARCON, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This consolidated admiralty appeal requires us to determine the qualifications for trustee status under the Ship Mortgage Act ("Act"), 46 U.S.C. Secs. 911-984. Initially, we must decide whether we have jurisdiction over the appeal brought by Pacific Fishermen, Inc.
 
 FACTS
 
 2
 Appellants Ballard Oil Company, Inc. ("Ballard"), the Boatyard, Inc. ("Boatyard"), Lunde Electric Company, Inc. ("Lunde"), and Pacific Fishermen, Inc. ("Pacific") are Washington corporations that furnished fuel, parts and other supplies to the BLUE OCEAN in 1980 and 1981. The BLUE OCEAN is a fishing and fish processing vessel owned by the Bluewater Partnership of Washington.
 
 
 3
 In 1980, the BLUE OCEAN was refurbished in the Karmsund Verft & Mek. Versted A/S shipyard ("Karmsund") in Norway. On May 13 and July 16, 1980, Bluewater executed two series of 10 promissory notes in favor of Karmsund. Two Norwegian agencies, Garantie Instituttet for Exportkredit ("GIEK") and Exportfinans, refinanced or guaranteed the loans.
 
 
 4
 Bluewater executed two ship mortgages of the BLUE OCEAN as security. Seattle-First National Bank ("Sea-First") became the trustee. It had been approved by the Department of Commerce, Maritime Administration, to act as ship mortgage trustee for 1980-1894. Both mortgages were recorded with the Coast Guard.
 
 
 5
 The notes were endorsed to Bergen Bank A/S by Harry B. McLachlin, Esq., counsel for Sea-First. In April and July 1980, Bergen Bank of Norway ("Bergen"), in trust for Exportfinans, and Sea-First executed Ship Mortgage Trust Agreements.
 
 
 6
 The vessel remained under Bluewater's ownership and control. The ship mortgage trust agreements provided that: 1) the beneficiary Bergen had no legal title in the mortgages and no right to foreclose or otherwise enforce the mortgages, and 2) upon default, if consistent with its legal duties as trustee, Sea-First would enforce the lien of the mortgages by an admiralty proceeding.
 
 
 7
 Bluewater defaulted on the notes due to a poor 1980 fishing season. Late in December 1982, Sea-First filed a complaint in admiralty to foreclose the ship mortgages and to obtain in rem jurisdiction over the BLUE OCEAN. Maritime lien claimants, including appellants, intervened.
 
 
 8
 In February 1983, a Marshal seized the vessel. In April, the court entered a default judgment against Bluewater. It did not appeal the judgment, which exceeded $5.6 million.
 
 
 9
 The vessel was sold at a Marshal's sale in Seattle on August 31, 1983 for $560,000. Transpacific International Industries, Inc. ("Transpacific") was the only bidder. Before the sale, Sea-First, GIEK and Transpacific had entered into a written agreement (referred to as the "side agreement") which provided that if Transpacific's bid was less than $2.175 million, it would pay to GIEK and Sea-First the difference between $2.175 million and the amount paid the Marshal.
 
 
 10
 On October 14, 1983, the court ordered disbursement of the sale proceeds from the court's registry upon Sea-First's filing a $560,000 indemnity bond to cover remaining unresolved maritime lien claims.
 
 PROCEEDINGS BELOW
 
 11
 On May 2, 1984, the court granted Sea-First's motion for partial summary judgment against Pacific and other lien claimants.[1] It issued a brief order that Sea-First's preferred ship mortgage lien is prior and superior to the defendants' liens. Without giving his reasons, Judge Voorhees dismissed with prejudice defendants' in rem claims against the vessel and the sale proceeds.
 
 
 12
 Pacific moved for reconsideration on May 11. It joined Ballard, the Boatyard, and Lunde in a trial brief filed the same day. It participated in the pretrial order filed May 14 and in the trial held May 14 and 15. The court ruled for Sea-First in an oral decision announced May 15 and by memorandum decision filed May 17.
 
 
 13
 The court reasoned that Sea-First met "the five [statutory] requirements imposed by Congress upon any entity seeking to act as a trustee." Memorandum Decision filed May 17, 1984, at 3. Judge Voorhees found that those were the only requirements of a ship mortgage trustee. He ruled that Sea-First held valid preferred ship mortgages which had priority over defendants' maritime liens under 46 U.S.C. Sec. 953(b).
 
 
 14
 On May 31, Pacific filed a notice of appeal from the court's May 2 partial summary judgment order. It assumed, however, that the order was not appealable.
 
 
 15
 In mid-June, Sea-First and appellants moved for entry of judgment. The differences in the proposed judgments involved exoneration of the bond and a statement of the court's reasoning. Appellants desired to set forth the court's reasoning as to both partial summary judgment and final judgment.
 
 
 16
 On July 18, 1984, Judge Voorhees entered judgment in the form proposed by defendants. Paragraph seven makes clear that "the court's ruling on partial summary judgment against these defendants is identical to that set forth in the court's Memorandum Decision of May 17, 1984." The court then confirmed the earlier ruling and denied Pacific's motion for reconsideration.
 
 
 17
 On July 26, Ballard, the Boatyard, and Lunde filed a notice of appeal from judgment entered July 18. Pacific did not appeal from the final judgment.
 
 STANDARD OF REVIEW
 
 18
 The court's findings of fact are reviewed under the clearly erroneous standard. Anderson v. City of Bessemer, --- U.S. ----, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). The issue of Sea-First's trustee duties under the Ship Mortgage Act involves the application of legal principles "in the mix of fact and law" and is reviewed de novo. See United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 ANALYSIS
 I. Jurisdiction Over Pacific's Appeal
 
 19
 The central issue of this case, the validity of the trust relationship between Sea-First and Bergen, was resolved by partial summary judgment as to some defendants and by trial on the merits as to appellants. Pacific straddled the fence. Its claims were dismissed by partial summary judgment, but it continued to participate in the proceedings which followed.
 
 
 20
 We agree with Sea-First's assertion that this court lacks jurisdiction over Pacific's appeal because the requirements of 28 U.S.C. Sec. 1292(a)(3) are not met.
 
 Section 1292(a)(3) provides:
 Sec. 1292. Interlocutory decisions
 
 21
 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
 
 
 25
 The primary purpose of this provision is well-settled. Professor Moore states:
 
 
 26
 It was a common practice for the admiralty court to determine first the issue of liability and, if it found liability, to refer the parties to a commissioner for the determination of damages. The purpose of Sec. 1292(a)(3) was to permit a party found liable to take an immediate appeal from that finding and thereby possibly avoid an oftentimes costly and protracted trial of the damages issue.
 
 
 27
 9 Moore's Federal Practice p 110.19, at 209-210 (1985).
 
 
 28
 The section permits appeals only when the order appealed from determines the rights and liabilities of the parties. Astarte Shipping Co. v. Allied Steel & Export Co., 767 F.2d 86, 88 (5th Cir.1985). See also Patton-Tully Transportation Co. v. Ratliff, 715 F.2d 219, 222 (5th Cir.1983) (no interlocutory appeal from order determining plaintiff is a Jones Act seaman because it permitted the claim to proceed against defendant); Gave Shipping Co., S.A. v. Parcel Tankers, Inc., 634 F.2d 1156, 1157 (9th Cir.1980) (no appellate jurisdiction because order granting motion to stay arbitration does not finally determine rights and liabilities of the parties).
 
 
 29
 Section 1292(a)(3) is an exception to the final judgment rule and, therefore, is construed narrowly. See Hollywood Marine, Inc. v. M/V ARTIE JAMES, 755 F.2d 414, 416 (5th Cir.1985). But see 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure Sec. 3927, at 113 (1977) (some expansion has crept into the section's application).
 
 
 30
 Rule 54(b) certification is not a prerequisite to appellate jurisdiction under Sec. 1292(a)(3). Gulf Towing Co., Inc. v. S/T AMOCO NEW YORK, 648 F.2d 242, 244 (5th Cir.1981) (per curiam). We would have jurisdiction over Pacific's appeal if the May 2 order finally determined its claims as to Sea-First. See Walter E. Heller & Co. v. O/S SONNY V., 595 F.2d 968, 971 (5th Cir.1979) (Sec. 1292(a)(3) jurisdiction from partial summary judgment order). It does not.
 
 
 31
 Pacific continued to litigate its claims after the May 2 order. It was not until entry of final judgment against appellants on July 18 that Pacific's claims finally were determined. Pacific should have appealed from that judgment.
 
 
 32
 Pacific's reliance on the rule that subsequent events may cure premature notices of appeal is misplaced. See Anderson v. Allstate Insurance Co., 630 F.2d 677, 680-81 (9th Cir.1980) (subsequent events can validate prematurely filed appeal); Ruby v. Secretary of the U.S. Navy, 365 F.2d 385, 389 (9th Cir.1966) (en banc) (premature notice of appeal will be directed to subsequently-entered final decision dismissing action), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967).
 
 
 33
 We find no reported admiralty case invoking the rule, probably because it clashes with Sec. 1292(a)(3). Nor has the rule been applied where, as here, a defendant appeals an interlocutory dismissal, remains in the case for trial to see whether it can secure a favorable ruling, then fails to appeal entry of final judgment against it.
 
 
 34
 A timely notice of appeal is mandatory and jurisdictional. Browder v. Director, Department of Corrections of Illinois, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); Bordallo v. Reyes, et al., 763 F.2d 1098, 1101 (9th Cir.1985). After participating in the trial, Pacific should have joined the other appellants in their appeal from final judgment. Its appeal is dismissed for want of jurisdiction.
 
 II. Ship Mortgage Trustee Requirements
 
 35
 Ballard, Boatyard and Lunde (referred to as appellants) challenge the court's rulings that Sea-First's two ship mortgages are entitled to preferred status under the Ship Mortgage Act. They assert that Congress intended that a true trust relationship be maintained for preferred ship mortgage status.
 
 
 36
 Before the Act's passage, it was impossible to foreclose on a ship mortgage in admiralty. Bogart v. The John Jay, 58 U.S. (17 How.) 399, 401-02, 15 L.Ed. 95 (1854). "This inferior status provided the mortgage holder with little security, a fact which adversely affected investor interest." Merchants National Bank of Mobile v. Ward Rig No. 7, 634 F.2d 952, 955 (5th Cir.1981). See G. Gilmore & C. Black, Jr., The Law of Admiralty 689 (2d ed. 1957).
 
 
 37
 The Act was passed to stimulate private investment in U.S. shipping and to protect the United States as the principal source of credit. Ward Rig, 634 F.2d at 955; G. Gilmore, supra at 691. See generally Gyory, Security at Sea: A Review of the Preferred Ship Mortgage, 31 Fordham L.Rev. 231 (1962). Legislative history reflects the Act's dual purposes "of encouraging low-interest private financing for the construction and reconstruction of American-flag ships, while at the same time limiting the possibility of foreign control of such ships." H.R.Rep. No. 1116, 89th Cong., 1st Sess. 2, reprinted in 1965 U.S.Code Cong. & Ad.News 4231, 4232.
 
 
 38
 The Act grants preferred status to a mortgage lien on American-flag vessels owned by U.S. citizens. 46 U.S.C. Secs. 922, 953. Only U.S. citizens may be ship mortgagees. Id., Sec. 922(a)(5). Mortgagee "in the case of a mortgage involving a trust deed and a bond issue thereunder, means the trustee designated in such deed." Id., Sec. 911(5).
 
 
 39
 Ship mortgages will not lose their preferred status where minor discrepancies exist. Substantial compliance with the Act's requirements is sufficient. See Ward Rig, 634 F.2d at 957 (four-day discrepancy on maturity dates between mortgages and payment schedules not fatal to mortgages' validity); Suburban Trust Co. v. O/S Teddy Bear, 1975 A.M.C. 1668, 1671 (M.D.Fla.1975) (discrepancies between date on mortgage and execution date had no adverse effect on defendants and would not affect validity of mortgage).
 
 
 40
 Thus, the Act permits foreign investment in U.S. vessels provided the financing technique involves a U.S. citizen as trustee. See State Street Bank and Trust Co. v. F/V Seafreeze Atlantic, 1981 A.M.C. 2001, 2002-03 (E.D.Va.1979); Moon Engineering Co. v. A/S VALIANT POWER, 214 F.Supp. 555, 559 (E.D.Va.1963) (trustee's citizenship is the Act's primary consideration).
 
 
 41
 The parties differ over the trustee's required duties and the effect of Congress' reaction to Chemical Bank New York Trust Co. v. S/S Westhampton, 358 F.2d 574 (4th Cir.1965), cert. denied, 385 U.S. 921, 87 S.Ct. 228, 17 L.Ed.2d 145 (1966).
 
 
 42
 Westhampton involved a mortgage on an American-flag ship given to a U.S. citizen trustee to secure a bond held by a foreign bank. In denying preferred status, the Fourth Circuit held that the bond was an "interest" in the ship and that "the transfer of the bond to an alien, illegal because made without Maritime Administration approval, infect[ed] the mortgage under which it was issued." Id. at 583.
 
 
 43
 Professors Gilmore and Black describe the aftermath of this decision as follows:
 
 
 44
 The Westhampton evidently sent a thrill of horror through the financial community. Congress was speedily prevailed upon to enact 'clarifying legislation', since 'the Westhampton decision, if not clarified immediately, could cast a cloud over all outstanding and future bond issues.'
 
 
 45
 G. Gilmore, supra at 697-98 (footnote omitted).
 
 
 46
 Congress responded quickly with Pub.L. 89-346. The relevant provision, as amended in 1981, reads:
 
 
 47
 No bond, note or other indebtedness which is secured by a mortgage of a vessel to a trustee may be issued, transferred, or assigned to a person not a citizen of the United States, without the approval of the Secretary of Transportation, unless the trustee or substitute trustee of such mortgage is approved by the Secretary of Transportation. The Secretary of Transportation shall grant his approval if such trustee or substitute trustee is a bank or trust company which (1) is organized as a corporation, and is doing business, under the laws of the United States or any State thereof, (2) is authorized under such laws to exercise corporate trust powers, (3) is a citizen of the United States, (4) is subject to supervision or examination by Federal or State authority, and (5) has a combined capital and surplus (as set forth in its most recent published report of condition) of at least $3,000,000....
 
 
 48
 46 U.S.C. Sec. 961(e).
 
 
 49
 By this amendment, "the fiction that American-flag shipping will not be allowed to come under foreign control was elegantly maintained without being allowed to interfere with the realities of the marketplace." G. Gilmore, supra at 698. We find that Congress chose the broad terms "bond, note, or other evidence of indebtedness" to protect other prevalent types of vessel financing other than the bond issue used in the Westhampton case. See 1965 U.S.Code Cong. & Ad.News 4231-36; 46 U.S.C. Sec. 961(e).
 
 
 50
 The crux of this case is appellants' attack on Sea-First's trustee status. Sea-First admits that it did not negotiate the loans, hold the notes, collect the payments due under the notes, or negotiate with the borrower after default.[2]
 
 
 51
 Judge Voorhees held, however, that Sea-First met the only requirements imposed by Congress upon a ship mortgage trustee. He wrote: "Congress did not require that the trustee have or exercise all the powers that any trustee can exercise." Memorandum Decision at 3.
 
 
 52
 Because nothing in the Act or its legislative history directly addresses the role of a ship mortgage trustee, appellants urge us to consult state law to fill a gap in the statute. We decline to do so because we find no gap to fill.
 
 As Judge Voorhees observed:
 
 53
 Trustees can have as many different duties as there are reasons for the creation of a trust. The party who creates a trust can specify the duties of the trustee. In the present case the duties of the trustee were largely custodial prior to default.
 
 
 54
 Memorandum Decision at 3-4.
 
 
 55
 Besides any duties defined in the trust agreement itself, we agree with Judge Voorhees that Congress did not intend additional requirements beyond those set forth in 46 U.S.C. Sec. 961(e). To be a trustee, an entity must:
 
 
 56
 1) be organized as a corporation, doing business under the laws of the United States or any state of the United States;
 
 
 57
 2) be authorized by federal or state law to exercise corporate trust powers;
 
 
 58
 3) be a United States citizen;
 
 
 59
 4) be subject to supervision or examination by federal or state authority; and
 
 
 60
 5) have a combined capital surplus of at least $3 million.
 
 
 61
 See 46 U.S.C. Sec. 961(e).
 
 
 62
 The Act's legislative history describes the U.S. trustee's requirements as "certain minimum standards." 1965 U.S.Code Cong. & Ad.News at 4235. Section 961(e) directs that once the requirements are met, "[t]he Secretary of Transportation shall grant his approval" (emphasis added). Moreover, the Maritime Administration's regulations state that "[a]pplicants meeting the standards for trustees specified in Pub.L. 89-346 will be eligible for approval as trustees." 46 C.F.R. Sec. 221.25(a) (1984).
 
 
 63
 The court's findings that Sea-First satisfied its statutory duties under Sec. 961(e) and its contractual duties under the Ship Mortgage Trust Agreements are not clearly erroneous. Nor is the finding that the side agreement before the marshal's sale did not affect the validity and priority of Sea-First's mortgages clearly erroneous.
 
 CONCLUSION
 
 64
 The court's judgment for Sea-First against Ballard, Boatyard and Lunde is affirmed. Pacific's appeal is dismissed for lack of appellate jurisdiction.
 
 
 
 [1]
 The other lien claimants were: Nor'Eastern Trawl System, Inc.; Northern Marine Electronics, Inc.; William R. Snyder; and Chevron U.S.A., Inc
 
 
 [2]
 Basically, all Sea-First did was sign the trust agreements with the beneficiary, place the ship mortgages in its vault, and periodically prepare statements charging annual fees