The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Plaintiff,

v.

S.S. AMERICAN LANCER, S.S. AMERI-
CAN AQUARIUS, S.S. AMERICAN
APOLLO, S.S. AMERICAN LYNX and
S.S. AMERICAN ASTRONAUT, their
engines, tackle apparel, furnishings,
equipment and appurtenances, in rem,
Defendants.

and

All Related Claims to Vessels and
Complaints-in-Intervention.

No. 87 Civ. 5842.

United States District Court,
S.D. New York.

June 13, 1988.

Weil, Gotshal & Manges, New York City
(Corinne Ball, Judy G.Z. Liu, Kevin P.
Hughes, of counsel), McCutchen, Black,
Verleger & Shea, Los Angeles, Cal. (Shel-
don A. Gebb, of counsel), for plaintiff.

Freehill, Hogan & Mahar, New York City
(Nathan J. Bayer, Eugene J. O'Connor, Jr.,
Alexander F. Vitale, of counsel), Kelley
Drye & Warren, New York City (Sandra E.
Mayerson, of counsel), for defendants.

## MEMORANDUM AND ORDER
## IN ADMIRALTY

OWEN, District Judge:

General Electric Capital Corporation
(GECC) holds a second mortgage on the
U.S. Lines Lancer vessels. It moves for
partial summary judgment declaring that
Prudential Insurance Company's $92,885,-
000. first mortgage on eight Lancer vessels
enjoys preferred status under the Ship
Mortgage Act, 46 U.S.C. §§ 911 *et seq.* only
to the extent of $92,885 due to a typo-
graphical error in a loan amendment to
Prudential's first mortgage omitting the
last three "000"s. The loan amendment
was recorded and entered by the Coast
Guard on the Lancers' documents as part
of the Ship Mortgage Act's requirements
for acquiring preferred status under 46
U.S.C. § 922. Prudential, by cross motion,
seeks summary judgment declaring its
preference to be the full $92,885,000.

U.S. Lines is currently the debtor in
bankruptcy proceedings under Chapter 11
and is the former owner of the Lancer
vessels, all of which have now been sold in
foreclosure proceedings in New York and
California. GECC and Prudential have been
"key lenders" to U.S. Lines for a number
of years. Prudential, in 1978, was the sole
first lender in the amount of $150 million,
and its loan was secured by the Lancer
vessels as collateral. By 1983, the amount
of this debt had been reduced to approxi-
mately $126 million.

In 1983 there was a second mortgage
agreement under which both Prudential

*and* GECC lent U.S. Lines approximately $114 million; the mortgage was secured by the Lancer vessels. Clause 40 of this second mortgage agreement, to which GECC was a party, stated expressly that it was subordinate to Prudential's first mortgage (then in the amount of $126 million), and it made numerous references to that document.

Although U.S. Lines did make payments on its Prudential debt between 1983 and 1985, it had incurred additional indebtedness in its Econline venture (for which Prudential and GECC, as well as a bank and a shipbuilder, were lenders) and by 1986 it was experiencing financial difficulties. Consequently, Prudential and U.S. Lines entered into a Corollary Mortgage Agreement in 1986, in which the parties agreed to reduce Prudential's mortgage debt to $92,885,000. It was at this point that the critical "000"s were unintentionally omitted from this document, making the amount of indebtedness to appear to have been reduced to $92,885. This Corollary Mortgage Agreement was duly recorded with the Coast Guard as required to ensure the mortgage's validity under the Ship Mortgage Act, § 921, and the erroneous amount was endorsed on the Lancer vessels' ownership documents. Significantly, however, the Corollary Mortgage Agreement made express reference to a particular Exhibit 1986-1, which was attached to and filed with the Corollary and which listed the correct amount of indebtedness.

U.S. Lines filed a petition in bankruptcy in November of 1986. The typographical error was not discovered until approximately May of 1987, when Prudential moved for a lifting of the automatic stay to allow it to foreclose on its Lancer mortgage. Of further significance is the fact that until that time GECC and the other creditors had been proceeding on the assumption that Prudential's debt was $92 million. As support for this, Prudential cites GECC's attendance at numerous "work-out" meetings prior to the bankruptcy filing during which debt restructuring was discussed and documents listing the correct amount were distributed, and of critical significance, that GECC had *actual notice* that the amount of the Prudential debt was $92 million.

GECC, however, contends that the figure $92,885, the amount recorded on the Lancer vessel documents, controls. GECC claims that the provisions of 46 U.S.C. § 922 must be strictly construed, and that any deviation leads to the loss of preferred status for a ship mortgage. GECC also attacks the contractual subordination provision of the second mortgage. It asserts that, since the second mortgage refers to the Prudential mortgage as a First *Preferred* Ship Mortgage, and the preference is only to the extent of $92,885, then the subordination only works to that extent and no more. GECC further argues that the validity of the Prudential mortgage under 46 U.S.C. § 921 is defeated to the extent that the Prudential mortgage is not preferred under 46 U.S.C. § 922.

I cannot accept GECC's strict construction argument and conclude that a mortgagee's failure to comply with every particular of § 922 will not necessarily defeat the preferred status of the mortgage.[1] Prior cases have held that irregularities in recorded mortgage documents or failures to comply with the minutiae of recording do not result in a loss of preferred status of the mortgage, provided that " 'there is an honest and substantial compliance with the statutes. A strict construction of the statutory terms should only occur in the face of fraud or, at a minimum, when the complainant can show some injury attributable to [the error].' " *Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.*, 621 F.Supp. 198, 215 (S.D.N.Y.1985), quoting *Lake Jackson State Bank v. O/S Kingfish Too*, 240 F.Supp. 450, 452 (S.D.Tex.1965). *See also In re Alberto*, 823 F.2d 712, 719 (3d Cir.1987) (substantial compliance with Ship Mortgage Act adequate to sustain validity of mortgage under 46 U.S.C. § 921); *Seattle–First National Bank v. Bluewater Partnership*, 772 F.2d 565, 570 (9th Cir. 1985) ("Ship mortgages will not lose their preferred status where minor discrepancies

1. I do not reach GECC's other contentions in light of my conclusion on the preference issue.

exist. Substantial compliance with the Act's requirements is sufficient."). While ninety million dollars is hardly minutia, one could equally argue that a typographical error in the absence of fraud with no injury to would-be windfall beneficiary GECC, which at all times had a full awareness of the actual figure, is in fact minutia, certainly as to GECC.

In *Merchants National Bank v. Ward Rig No. 7*, 634 F.2d 952 (5th Cir.1981), the Fifth Circuit upheld the validity and preferred status of ship mortgages in the face of numerous errors.[2] The court there stated: "We underscore that there is not the first breath of fraud or purposeful intent to evade or to mislead anyone extant in this record," *id.* at 958, and that there were no ambiguities because the parties knew of and intended to adhere to the correct maturity date. *Id.* at 957.

GECC's actual knowledge of the correct amount of Prudential's debt and the express contractual provision of the second mortgage conferring priority status to the first mortgage, combined with the absence of any showing of either fraud on Prudential's part or prejudice to GECC resulting from the typographical error, compel the clearly equitable conclusion that Prudential's first mortgage enjoys preferred status under the Ship Mortgage Act in the amount of $92,885,000. As stated in *Morgan, supra*, 621 F.Supp. at 216, in rejecting a challenge to the validity and preference of a ship mortgage based on counsel's failure to procure proper notarization of documents:

> While it would be comforting to rail at the casual conduct of counsel which created this issue, such an indulgence would in no way reduce the difficulty presented to the court which must determine whether or not to invalidate substantial rights because of the failure to comply with clearly understood formalities.... The contracting parties intended to create the rights claimed ..., and had the transaction been completed with the appropriate punctilio the [intervenors]

would have had no recourse but to accept [plaintiff's position]. The effect of strict enforcement in these circumstances is simply too drastic, given the unwitting nature of the ... failures, despite the reluctance of this court to condone a performance that is less than what is required.

Accordingly, GECC's motion for summary judgment is denied and Prudential's cross motion for summary judgment is granted.

So ordered.

---

**2.** The facts of the instant case point even more strongly in favor of upholding the preferred status of Prudential's first mortgage, inasmuch

as an exhibit listing the correct amount of the mortgage was filed and recorded along with the documents containing the typographical error.