**ALL ALASKAN SEAFOODS, INC.,**
**Plaintiff–Appellant,**

v.

**M/V SEA PRODUCER, her engines, tackle, apparel, furniture, and equipment, In Rem; and Express Marine Transportation Company, In Personam; Defendants.**

**M/V SEA PRODUCER, O.N. 284437, her engines, tackle, apparel, furniture and equipment, In Rem, Defendant–Intervenor,**

v.

**PEOPLES NATIONAL BANK OF WASHINGTON,**
**Plaintiff–Intervenor–Appellee.**

No. 88–3585.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1989.

Decided Aug. 14, 1989.

Steven V. Gibbons, Lane, Powell, Moss & Miller, Seattle, Wash., for plaintiff-appellant.

Dwight L. Guy, Seattle, Wash., for plaintiff-intervenor-appellee.

Before ALARCON, FERGUSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

All Alaskan Seafoods Inc. ("All Alaskan"), a shipper and the plaintiff in this admiralty case, appeals the district court's partial summary judgment. The district court held that All Alaskan's maritime lien on a vessel was subordinate to a mortgagee's ship's mortgage. The district court determined that under the Ship Mortgage Act, All Alaskan's claim for cargo damage could only arise under contract law, not under tort law; therefore the claim was not entitled to priority as a maritime lien under 46 U.S.C. § 953(a)(2). We reverse and remand.

## FACTS

In October 1986, All Alaskan commenced an action for cargo damage against the vessel M/V Sea Producer and against Express Marine Transportation Co. ("Express Marine"), the vessel's operator. In its complaint, All Alaskan alleged that it suffered losses of approximately $1.5 million when its shipment of frozen king crab thawed while in transit from Molar, Alaska to Seattle, Washington, and was contaminated by a refrigerant leakage in the hold of the Sea Producer. All Alaskan further alleged that the losses it suffered were caused by the negligence of Express Marine.

In April 1987, People's National Bank of Washington ("People's") intervened in the

action to foreclose a preferred maritime mortgage on the Sea Producer.

Before discovery commenced, All Alaskan and People's filed cross-motions for partial summary judgment on the issue of the priority of their respective liens against the Sea Producer. The district court denied All Alaskan's motion and granted partial summary judgment for People's Bank, holding that All Alaskan's claim sounded only in contract, not in tort, and thus was inferior to the lien created by People's preferred mortgage.[1] All Alaskan appeals that judgment.

## ANALYSIS

### A. *Jurisdiction*

■ We must first determine whether we have jurisdiction over this appeal. All Alaskan concedes that the order at issue is interlocutory in that the merits of its claims and People's mortgage remain unadjudicated. All Alaskan contends, however, that appellate jurisdiction exists pursuant to 28 U.S.C. § 1292(a)(3) which provides in relevant part that courts of appeals shall have jurisdiction of appeals from:

> (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

To fall within the ambit of section 1292(a)(3), it is sufficient if an order conclusively determines the merits of a particular claim as between the parties. *Martha's Vineyard Scuba Headquarters v. Unidentified Vessel,* 833 F.2d 1059, 1064 (1st Cir. 1987) (jurisdiction under section 1292(a)(3) where district court order granting salvor title to property already recovered from shipwreck determined rights of two claimants to that property, but left undecided claims of same parties to future exploration rights). A partial summary judgment order which finally determines one party's claims as to another party is appealable under section 1292(a)(3). *See Kingsgate*

*Oil v. M/V Green Star,* 815 F.2d 918, 921 (3d Cir.1987) (jurisdiction under section 1292(a)(3) where order denying application to categorize cargo unloading expenses as administrative costs finally determined appellant's right to recover share of the proceeds from sale of vessel); *cf. Seattle–First National Bank v. Bluewater Partnership,* 772 F.2d 565, 569 (9th Cir.1985) (no jurisdiction under section 1292(a)(3) because challenged order did not finally determine all claims of party asserting maritime lien on vessel as to mortgagee of vessel).

In urging us to reject jurisdiction over this appeal, appellees rely on our decision in *Bluewater Partnership,* 772 F.2d 565. In that case, a maritime lien claimant, Pacific Fisherman Inc., ("Pacific") attempted to appeal from a district court's interlocutory order determining that a number of maritime lien claims on a vessel, including Pacific's claim, were subordinate to a preferred maritime mortgage held by Seattle–First National Bank. In addition to the question of lien priorities, the case involved a challenge by lien claimants to the validity of Seattle–First's mortgage; they contended that Seattle–First's trustee status did not meet the requirements of the Ship Mortgage Act. We held that we did not have appellate jurisdiction over Pacific's appeal under section 1292(a)(3) because the disputed order from which the appeal was taken had not finally determined Pacific's claims as to Seatle–First National Bank. *Id.* at 569. We pointed out that the challenge to Seattle–First's trustee status was still pending following the interlocutory order from which Pacific eventually appealed, and as a result the district court's lien priority determination could not have been final as to any of the lien claimants, including Pacific. Pacific, in fact, continued to participate in the district court proceedings notwithstanding the entry of the district court's interlocutory order from which it appealed. *Id.* at 568–69.

---

1. Pursuant to an agreement approved by the district court, the Sea Producer was sold for $185,000. Liens against the vessel were transferred to the sale proceeds. The unpaid principal balance of People's mortgage is $1,773,570; interest exceeds $100,000. As previously stated, All Alaskan's claim is approximately $1.5 million.

Here, in contrast, the validity of People's maritime mortgage is unchallenged and there are no claims between All Alaskan and People's against one another. As between the two of them, they seek only a determination of their relative priorities as lien claimants. The district court's partial summary judgment conclusively determined the priority of All Alaskan's lien by classifying it as a contractual lien, and thus denying it priority under 46 U.S.C. 953(a)(2). Further, under the circumstances of this case, as a practical matter, the district court's decision giving People's mortgage priority over All Alaskan's lien claim constitutes a final determination of All Alaskan's right to recover anything for its cargo loss under any theory. This is so because it is undisputed that Express Marine is judgment proof and the unpaid balance of People's preferred ship mortgage far exceeds the proceeds from the sale of the vessel. Given these financial realities, "although in the abstract, [All Alaskan] may still assert [its] claim[ ], its nether position on the creditors' totem pole [which position the court determined by its partial summary judgment] converts this assertion into a fruitless gesture." *Kingsgate Oil,* 815 F.2d at 922. Accordingly, we conclude that the district court's partial summary judgment is appealable under section 1292(a)(3).[2]

### B. *Merits*

■ All Alaskan contends that the district court erred in ruling that, under the Ship Mortgage Act, a claim for cargo damage could sound only in contract, not in tort, and thus that All Alaskan's lien was subordinate to People's mortgage. We review de novo the district court's grant of partial summary judgment. *See Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

The Ship Mortgage Act (the "Act"), gives lien status and relatively high priority to a mortgage which complies with the Act. 46 U.S.C. § 953. The statutory mortgage, sometimes referred to as a preferred ship mortgage, was created to encourage investment in the shipping industry. *See Seattle First Nat'l Bank v. Bluewater Partnership,* 772 F.2d 565, 569 (9th Cir.1985). Under the Act, a preferred ship mortgage lien has priority over most claims against a vessel, including contract claims, but is subordinate to preferred maritime liens. Subsection 953(a)(2) defines "preferred maritime liens" to include "a lien for damages arising out of tort...."

In its motion for summary judgment on the issue of lien priority, All Alaskan alleged that damage to its shipment of king crab resulted from the negligent operation of the vessel Sea Producer as a common carrier. Thus, All Alaskan argued, its cargo damage claim gave rise to a tort lien which was superior, under the Ship Mortgage Act, to People's mortgage. The district court acknowledged that liens against a ship for cargo damage are "hard to rank with precision," and have been viewed by courts as both "breaches of the contract of affreightment or as breaches of a duty imposed by law and, therefore tort." The district court was concerned however, that allowing All Alaskan to plead its cargo damage claim in tort, and thus secure priority over the bank's preferred ship mortgage, would undercut the purpose of the Ship Mortgage Act, that of encouraging investment in shipping. Thus, without determining what duty of care Express Marine owed to All Alaskan under common law or maritime statutory law, the district court ruled that All Alaskan's claim for cargo damage could sound only in contract. As a result, it was not entitled to priority under 46 U.S.C. § 953(a)(2).

---

**2.** All Alaskan argues, as an alternative basis for jurisdiction, that the interlocutory order at issue here is appealable under *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). We reject this argument. Recent decisions of this court make clear that the exception to the finality requirement carved out by *Gillespie* is a narrow one, applicable only "to orders involving unsettled issues of national importance where immediate review would serve the purpose of judicial economy underlying the finality rule. (citation omitted)." *Kiaaina v. Jackson,* 851 F.2d 287, 290 n. 5 (9th Cir. 1988); *see also In re Subpoena Served On California Public Utilities Commission,* 813 F.2d 1473, 1479–80 (9th Cir.1987). This is not such a case.

In ruling as it did, the district court considered the contractual relationship between All Alaskan and Express Marine to preclude a maritime lien for damages premised on tort liability. We disagree with this premise. In *The John G. Stevens*, 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898), the Supreme Court held that a claim for damage to a tow sounded in tort independent of any contract made, and was thus superior as a maritime lien to other purely contractual liens. In the course of its opinion, the Court rejected the argument that the tug's liability was analogous to that of a common carrier for loss of goods carried and thus could sound only in contract. The Court stated:

> But even an action by a passenger, or by an owner of goods against a carrier, for neglect to carry and deliver in safety, is an action for the breach of a duty imposed by the law, independently of contract or of consideration, and is therefore founded in tort.

*Id.* at 124–25, 18 S.Ct. at 548–49. Although this statement may be read as dictum, it has served as a basis for classifying claims for cargo damage as torts and for giving such claims tort priority. *See, e.g., Oriente Com'l v. American Flag Vessel M/V Floridian*, 529 F.2d 221, 222 (4th Cir.1975); *The Henry Breyer*, 17 F.2d 423, 429 (D.Md. 1927); *Morrisey v. S.S.A. & J. Faith*, 252 F.Supp. 54, 59 (N.D.Ohio 1965).

The proposition that the existence of a contractual relationship between the parties does not limit claims between them to contract actions was reaffirmed by the Supreme Court in *Stevens v. The White City*, 285 U.S. 195, 201, 52 S.Ct. 347, 349, 76 L.Ed. 699 (1932), and in *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 372, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). In *Cortes*, the Court held that a seaman who fell ill aboard a ship and died ashore after his ship reached home port had a remedy in tort against the owner of the vessel for breach of the Jones Act duty of maintenance and cure. Judge Cardozo, writing for the Court, rejected the argument that the only duty owed the seaman was a contract duty incident to the seaman's contract of employment:

We think the origin of the duty is consistent with the remedy in tort, since the wrong if a violation of the contract, is also something more. The duty, as already pointed out, is one annexed by law to a relation, annexed as an inseparable incident without heed to any expression of the will of the contracting parties. *For breach of a duty thus imposed, the remedy upon the contract does not exclude an alternative remedy built upon the tort.*

*Cortes*, 287 U.S. at 372, 53 S.Ct. at 174 (emphasis added).

Applying these principles, the Fourth Circuit in a case similar to the one now before us held that a claim for cargo damage against a ship as a common carrier was a claim for damages arising out of tort and thus a preferred maritime lien under 46 U.S.C. § 953(a). *Oriente Com'l v. American Flag Vessel, M/V Floridian*, 529 F.2d 221, 223 (4th Cir.1975). In *Oriente*, the shipper, Oriente Commercial, Inc. ("Oriente") was one of many *in rem* claimants against the M/V Floridian which was arrested and sold. The United States held two valid preferred ship mortgages on the vessel. Oriente took a default judgment on its claim that a shipment of meat had been negligently damaged in transit. The various liens asserted against the vessel exceeded the proceeds from its sale. Litigation over priority of the liens ensued.

The district court in *Oriente*, guided by the same policy concerns that informed the district court decision at issue here, reasoned that because cargo claims should be subordinated to preferred mortgages such claims should sound only in contract as a matter of law. The Fourth Circuit reversed. After reviewing the Supreme Court's decision in *John Stevens* as well as a number of lower court decisions which recognized that cargo damage claims may give rise to tort liability, the Fourth Circuit observed that the:

> [Ship Mortgage Act] draws no distinction between cargo claims that sound in tort, the so-called hybrid liens, and any other type of claim for damages arising out of tort. While Congress might have been

well advised to subordinate cargo claims, it flatly granted priority to all claims arising out of tort. The result reached by the district court and pressed by the United States would carve out an exception to the statute unwarranted by its language. Whatever Congress meant, it stated that all tort liens are prior to preferred mortgage liens. In light of cases decided both before and after enactment of the Ship Mortgage Act, holding that cargo claims such as those in the instant case sound in tort, we cannot say that Congress intended something else. *Id.* at 223.

We find the Fourth Circuit's analysis cogent and follow it in this case. Although the district court here was guided by important policy considerations, neither the weight of authority nor the language of the Ship Mortgage Act justifies the district court's decision. If Express Marine breached its duty of care with respect to All Alaskan then that breach of duty can give rise to tort liability irrespective of contract obligations between the parties. *See Oriente*, 529 F.2d at 222–23. Accordingly, we hold it was error for the district court to rule, as a matter of law, that All Alaskan's cargo claims could not sound in tort.[3]

All Alaskan also asks us to rule, based on evidence presented to the district court, that the Sea Producer was a common carrier and thus that the duty of due diligence codified in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300–1315, applies by its own force to the contract between Express Marine and All Alaskan. We note first that, contrary to All Alaskan's assertion, COGSA would not apply by its own terms to the contract between Express Marine and All Alaskan because the contract was for carriage between two domestic ports. *See* 46 U.S.C.

App. §§ 1300, 1312; *Pan Am World Airways v. Cal. Stevedore*, 559 F.2d 1173, 1175 n. 3 (9th Cir.1977). Rather, in the absence of express agreement by the parties, the federal statute governing bills of lading for carriage between two domestic ports is the Harter Act, 46 U.S.C.App. §§ 190–196. However, even if Express Marine was not a common carrier for purposes of the shipment in question, and thus no federal statute applied by its terms, the parties may have incorporated a statutory standard by expressly adopting it in their contract. *See Pan Am World*, 559 F.2d at 1175 n. 3. These are inquiries best left to the district court.

### CONCLUSION

The district court's partial summary judgment is reversed. This case is remanded to the district court. On remand the district court should determine the merits of All Alaskan's claim, and resolve the dispute as to whether the Sea Producer was a common carrier in its carriage of All Alaskan's goods, or whether the parties contracted that the duties of a common carrier would be owed to All Alaskan regardless of whether the Sea Producer was a common carrier.

**REVERSED AND REMANDED.**

---

**3.** The district court's reliance on *Kopac Intern Inc. v. M/V Bold Venture*, 638 F.Supp. 87 (W.D. Wash.1987) was misplaced. That case involved cargo claims arising out of a charter party relationship. It was not disputed that the vessel against which the claims were brought was a private carrier. The court in *Kopac* held that breach of the charter sounded in contract, not tort. *Id.* at 93. In so ruling however, the *Kopac* court explicitly distinguished the case before it from cases involving a breach of a common carrier's duty, implicitly acknowledging that such duties to cargo interests are separate from any contractual obligation a carrier might have. *Id.* at 89 n. 2.