**CITY OF FORT MADISON, IOWA, a municipal corporation, Appellant,**

v.

**EMERALD LADY, O.N. 972894, her engines, tackle, apparel, furniture, equipment, and all other necessaries thereunto appertaining and belonging, etc., in rem; Steamboat Southeast, Inc., an Iowa corporation, in personam, Appellees.**

No. 92–2599.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided April 13, 1993.

Rehearing Denied May 11, 1993.

Warren John Marwedel, Chicago, IL, argued (Robert N. Johnson, Fort Madison, IA, on the brief), for appellant.

Robert D. Nienhuis, St. Louis, MO, argued (Gary T. Sacks and Douglas E. Gossow on the brief), for appellees.

Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

BEAM, Circuit Judge.

The City of Fort Madison (Ft. Madison) appeals the district court's[1] denial of maritime liens against the Emerald Lady, a gambling boat. Ft. Madison claims entitlement to maritime liens for the construction costs of a passenger loading dock and attendant facilities, and for wharfage payments due under a nine-year lease. It bases its claims on the theory that these items represent necessaries provided to the Emerald Lady for which Ft. Madison has not been paid. Ft. Madison asserts that these debts were incurred when the Emerald Lady was moved, in violation of the terms of the lease, from Ft. Madison, Iowa, to Biloxi, Mississippi, by Steamboat Southeast, Inc. (Steamboat).[2] Ft. Madison also appeals the district court's release of the Emerald Lady from arrest on the posting of a $35,000 bond, and contends that the bond is inadequate to cover all of Ft. Madi-

son's damages. We dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

Several years ago, in a bid to attract tourists and stimulate local economies, Iowa legalized riverboat gambling. This controversy arises out of that decision. Towns along the Mississippi river, including Ft. Madison, vied to attract gambling riverboats to operate from their shores. Ft. Madison entered into an agreement with Steamboat to build a dock, passenger pavilion, parking facilities, and a pedestrian overpass of railroad tracks running along the river. The agreement called for Steamboat to furnish a riverboat and operate it from the facilities for a period of nine years. Ft. Madison agreed to give Steamboat exclusive use of the dock for gambling purposes, although the city retained the right to allow other boats to use the dock for other purposes when Steamboat's riverboat was docked elsewhere. The Emerald Lady is the gambling boat which Steamboat has operated and docked at Ft. Madison.

Steamboat agreed to make payments annually, on April 1st, for the duration of the lease. The payments were calculated to cover one half of Ft. Madison's construction costs over the life of the lease. The lease also contained a clause which noted that although Ft. Madison would expend substantial funds constructing the facilities, Steamboat could terminate the lease on six-months' notice if it determined that the operation was financially infeasible.

Steamboat was late with its April, 1992, payment. In May, 1992, Ft. Madison sent a letter informing Steamboat of its default. On June 1, 1992, Steamboat informed the city, in writing, that the Emerald Lady would leave Ft. Madison on July 5, 1992. Steamboat alleged that the Emerald Lady's operations were unprofitable,[3] and offered

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Harold C. Vietor, United States District Judge for the Southern District of Iowa.

2. Steamboat is the owner of the Emerald Lady.

3. Being cognizant of the wide range of accounting methods available, the choice of which may depend on one's ultimate goal, we voice no opinion as to the unprofitability of the Emerald Lady's operations. Whether the operations were actually unprofitable, or whether Ft. Madison has the right to challenge Steamboat's deter-

Ft. Madison the next six-months' prorated rent in lieu of six-months' notice. Ft. Madison refused to accept the prorated rent, and filed an action in district court for the arrest of the Emerald Lady, contending that a maritime lien existed for unpaid wharfage. The district court ruled that it had no subject matter jurisdiction. *City of Ft. Madison v. Emerald Lady*, No. 3–92–CV–70100, Order of Dismissal (S.D.Iowa, June 18, 1992). Ft. Madison appealed to this court. We vacated and remanded, referring the district court to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental Rules). *City of Ft. Madison v. Emerald Lady*, No. 92–2399, Order (8th Cir., June 26, 1992). The district court subsequently issued an order for the arrest of the Emerald Lady. Steamboat intervened, contesting the arrest.

After a post-arrest hearing, the district court determined that Ft. Madison had a valid maritime lien against the Emerald Lady for the unpaid wharfage for the 1992 season, but held that no maritime lien existed for future seasons' wharfage. At the same hearing, Ft. Madison amended its complaint, adding an *in rem* claim against the Emerald Lady for the construction costs of the dock and passenger loading facilities, and an *in personam* claim against Steamboat for breach of the total agreement. The district court also found that Ft. Madison had no lien against the Emerald Lady for the construction costs. In view of these rulings and pursuant to Supplemental Rule E(5), the district court ordered the release of the Emerald Lady upon the payment of a $35,000 bond, an amount the district court deemed to be twice the amount fairly stated by Ft. Madison's claim for the 1992 wharfage.

The district court certified its decision for appeal, under 28 U.S.C. § 1292(b).[4] We denied Ft. Madison's petition to proceed with the section 1292(b) appeal. Ft. Madison brings the present appeal under 28 U.S.C. § 1292(a)(3).[5] Prior to briefing and argument, Steamboat moved for dismissal of the present appeal contending that because there had been no final determination of the rights and liabilities of the parties as required by section 1292(a)(3), this court had no jurisdiction to hear the appeal. The motion was denied and the parties proceeded to briefing and oral argument. There has been no finding below as to whether or not the lease, or any agreement, between the parties was breached.

## II. DISCUSSION

### A. Jurisdiction—Findings on the Liens

 Although Steamboat's motion to dismiss the appeal was initially denied, this denial does not confer jurisdiction upon this court nor does it relieve us of the duty to ascertain jurisdiction and dismiss the appeal if we find jurisdiction to be lacking. *E.g., Austracan, (U.S.A.), Inc. v. M/V Lemoncore*, 500 F.2d 237 (5th Cir.1974). It is axiomatic that courts of appeal may only entertain appeals from final determinations of the courts below. 28 U.S.C. § 1291. Congress has, however, crafted several exceptions to this rule, allowing appeals of right in narrowly defined areas where interlocutory actions have drastic and irreparable consequences. 28 U.S.C. § 1292(a). These exceptions to the final judgment rule are to be strictly and narrowly construed. *See Schoenamsgruber v. Hamburg Ameri-*

---

mination of unprofitability, are questions which have not been addressed below and which are not before us.

**4.** Section 1292(b) provides for the certification of controlling questions of law by the district court for interlocutory appeal to the appellate court, in circumstances where appeal is otherwise unavailable. Upon certification, we may, at our discretion, permit an appeal on the question certified. 28 U.S.C. § 1292(b).

**5.** Subsection (a)(3) states:

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

. . . .

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

28 U.S.C. § 1292(a)(3).

can Line, 294 U.S. 454, 458, 55 S.Ct. 475, 79 L.Ed. 989 (1935); *Slatton v. Martin K. Eby Constr. Co.*, 491 F.2d 707, 708–09 (8th Cir.1974); *St. Louis Shipbuilding & Steel Co. v. Petroleum Barge Co.*, 249 F.2d 905, 907 (8th Cir.1957). In particular, 28 U.S.C. § 1292(a)(3), which permits parties in admiralty cases to appeal interlocutory decrees that finally determine the rights and liabilities of the parties, has been repeatedly interpreted to require a decision on the merits of the claims or defenses underlying the dispute as a predicate for jurisdiction. *E.g., All Alaskan Seafoods, Inc. v. M/V Sea Producer*, 882 F.2d 425, 427 (9th Cir. 1989); *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked, & Abandoned Steam Vessel*, 833 F.2d 1059, 1063–64 (1st Cir.1987); *Astarte Shipping Co. v. Allied Steel & Export Serv.*, 767 F.2d 86, 88 (5th Cir.1985); *St. Louis Shipbuilding*, 249 F.2d at 906–07.

The context in which section 1292(a)(3) was enacted makes clear that this interpretation of the statute is correct. In admiralty, trials were traditionally bifurcated. First there would be a trial before the court on the issue of liability. If there was a finding of liability, there would then be a separate hearing before a special master to ascertain damages. These damages hearings were often both lengthy and costly. *See St. Louis Shipbuilding*, 249 F.2d at 906–07. Congress intended 28 U.S.C. § 1292(a)(3) to permit parties to appeal the finding of liability on the merits, before undergoing the long, burdensome, and perhaps unnecessary damages proceeding. *Id.* Section 1292(a)(3) was not intended to clutter the federal docket with interlocutory "odds and ends." *Id.* at 906.

The district court's conclusion that Ft. Madison has no maritime lien on the Emerald Lady for either future wharfage or for the capital construction costs of the docking facilities has nothing to do with the merits of the dispute between the city and the boat, and does not determine Ft. Madison's ultimate right of recovery.[6] A maritime lien is available to certain classes of creditors in certain situations to provide security for an alleged debt, but the assertion of a lien, alone, has no bearing on whether the debt is actually owed. The ultimate question underlying the existence of a lien is the validity of the debt alleged. Therefore, the denial of a lien is not a decision on the merits of the underlying dispute about the debt that finally decides the rights and liabilities of the parties and from which a party may appeal under 28 U.S.C. § 1292(a)(3).[7]

Ft. Madison seems to argue that the district court's decision on the lien issue satisfies the final decision requirement for section 1292(a)(3) jurisdiction. It is true that, over time, courts have somewhat liberalized their interpretation of 28 U.S.C. § 1292(a)(3). However, cases recognizing section 1292(a)(3) jurisdiction where less than all the merits have been decided, have done so where the decision at issue determined: 1) the underlying merits of at least one separable claim; 2) the only dispute between the parties appealing; or 3) effectively and for all practical purposes, if not technically, a party's right to recover. *See Martha's Vineyard*, 833 F.2d at 1064 (final decision as to who has title to artifacts is severable and appealable under section 1292(a)(3)); *All Alaskan*, 882 F.2d at 427–

6. We note that the district court's admiralty jurisdiction over Ft. Madison's *in personam* claim against Steamboat and its decision that Ft. Madison has no further maritime liens are completely separate questions. *See Exxon Corp. v. Central Gulf Lines, Inc.*, — U.S. —, —, 111 S.Ct. 2071, 2077, 114 L.Ed.2d 649 (1991). The former question is not before us and we do not address it. However, for the purposes of this dismissal we assume, without deciding, that the entire contract is maritime in nature.

7. This case is illustrative of the very purpose for the requirement of a final decision on the merits. If Ft. Madison were to lose on the merits of the underlying question of breach, any decision we would now make as to the lien issue would be rendered academic. This waste of judicial and party resources exemplifies the "four horsemen" (congestion, duplication, delay, and added expenses) the policy of finality strives to avoid. *Sierra Club v. Marsh*, 907 F.2d 210, 214 (1st Cir.1990). We are certain that Congress did not intend to open the federal docket to advisory opinions when it provided an avenue of appeal for those parties in admiralty with a final decision on the merits of their dispute in hand. *See St. Louis Shipbuilding*, 249 F.2d at 906–07.

28 (section 1292(a)(3) jurisdiction found where decision of priority between two liens decided only controversy between two parties *and* 1) there was no challenge to the validity of either lien; 2) the *in personam* defendant was judgment proof; and 3) the proceeds from the sale of the ship were grossly inadequate to cover even the lien determined to be superior); *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 922 (3d Cir.1987) (appeal of right under section 1292(a)(3) where determination that costs where not administrative effectively and conclusively determined claimant's rights to sale proceeds). None of these cases signal a retreat from the requirement of a dispositive decision on the underlying merits of some claim, or at least a decision somehow dispositive of the right to recover, as a prerequisite of section 1292(a)(3) jurisdiction.

The posture of this case presents none of those scenarios which might render a less than complete decision on the merits final for the purposes of 28 U.S.C. § 1292(a)(3). The dispute underlying the liens has not been decided, and there has been no final severable decision on the merits of any issue. The issue of the liens is not the only dispute between the parties, but is inextricably entwined with the alleged breach. Further, the lien decision in no way implicates, for all practical purposes, Ft. Madison's ultimate right to recover on its underlying claim of breach of the lease agreement. There remains a live dispute as to the existence of the debt, there is no allegation that Steamboat is judgment proof, and the Emerald Lady has not been reduced to a fund inadequate to pay her creditors. Finally, there is no danger that the Emerald Lady will be beyond the jurisdiction of the United States courts should Ft. Madison ultimately prevail and need to levy execution of any judgment against the boat. In short, none of the reasons previously advanced by courts as bases for expanding 1292(a)(3) jurisdiction to less than complete decisions on the merits of all the claims and defenses between the parties are present, nor can we here imagine any reason not discussed. We must therefore dismiss the appeal as to the liens.

**B. Jurisdiction—Allegation of Inadequate Bond**

Similarly, we have no jurisdiction under 28 U.S.C. § 1292(a)(3) to review the adequacy of the bond the district court set for the release of the Emerald Lady pursuant to Supplemental Rule E(5). Under Rule E(5), the district court may release the arrested vessel upon a bond which is not to exceed twice the amount fairly claimed for a lien, if the parties cannot mutually agree to an acceptable bond. Because we have no jurisdiction, under these circumstances and at this point in the litigation, we have no basis for considering the adequacy of the bond. The setting of a bond is not a final determination on the merits of the rights and liabilities of the parties in the sense discussed above. Therefore, under 28 U.S.C. § 1292(a)(3), we must dismiss the appeal.

**III. CONCLUSION**

For the reasons stated above, the appeal is dismissed.