(December 3, 1998)

■ METRO-NORTH COMMUTER RAILROAD COMPANY et al., Appellants, v YONKERS CONTRACTING COMPANY, Defendant, and UNDERWRITERS AT LLOYD'S LONDON, Respondent. JOHN D. FENN, on Behalf of Himself and Certain Underwriters at Lloyd's London, Sued Herein as UNDERWRITERS AT LLOYD'S LONDON, Third-Party Plaintiff-Respondent, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Third-Party Defendant-Appellant. [680 NYS2d 537] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered May 16, 1997, which, after a nonjury trial in a declaratory judgment action concerning insurance coverage, rendered judgment in favor of defendants and third-party plaintiff Underwriters at Lloyd's London (hereinafter Lloyd's), reversed, on the law, without costs, and judgment granted in favor of the plaintiffs declaring that Lloyd's is obligated to defend and indemnify plaintiffs in an underlying personal injury action.

The trial court erred in finding that the applications for insurance were an "integral" part of the subject insurance policy underwritten by Lloyd's. It is undisputed that the policy itself contained no reference to the applications nor is there any evidence that the applications were attached thereto. The policy unambiguously provided coverage to Metro-North Commuter Railroad Company's employees who were assigned to work on the project under the direction of the defendant contractor. There was no limitation of coverage to certain types of employees. Moreover, the policy specifically stated that it contained "all the agreements between [Lloyd's and Metro-North] concerning the insurance afforded". Therefore, the trial court ran afoul of the parol evidence rule when it resorted to extrinsic evidence to limit the scope of coverage unambiguously set forth in the policy of insurance (see, Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 599-600; Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548; W.W.W. Assocs. v Giancontieri, 77 NY2d 157, 162-163).

It is well settled that, in the proper circumstances, mutual mistake or fraud may form the basis for reforming a written agreement (Chimart Assocs. v Paul, 66 NY2d 570, 573). Here, the record does not contain the "high level" of proof of mutual mistake required for reformation (Little Prince Prods. v Sco-

*ullar*, 246 AD2d 306). Any mistake as to the accuracy of the expression of the parties' agreement in the insurance policy was solely that of Lloyd's. Concur—Lerner, P. J., Wallach and Rubin, JJ.

Milonas, J., dissents in a memorandum as follows: Metro-North acquired a policy from National Union to cover "force account workers" on a particular tunnel project site. Because the National Union policy failed to cover certain other Metro-North employees, specifically flagmen (because they did not work in the tunnel itself) and inspection personnel (because they were managerial employees), Metro-North sought to provide coverage for these particular employees by obtaining from Lloyd's a separate policy solely for their benefit and to the extent of this limited exposure. The record unequivocally establishes that, according to both Metro-North and Lloyd's, Metro-North requested and expected to pay for only such limited coverage; that Lloyd's undertook to provide only such limited coverage; and that the premiums were set accordingly.

While the policy certificate failed to contain language to this effect, the proposal forms submitted by Metro-North's Director of Insurance for Lloyd's consideration reflect the limited nature of the coverage sought. These forms further provide that, should Lloyd's issue the requested policy, "THEN THIS PROPOSAL AND ANY SUPPLEMENTARY INFORMATION PERTAINING HERETO SHALL FORM THE BASIS OF ANY POLICY ISSUED AND BE DEEMED INCORPORATED THEREIN." On the basis of this language and the evidence adduced before it, the trial court concluded that the proposal was part of the policy and the coverage afforded did not extend to the injured crane operator who brought the underlying action because he was not a flagman or inspector intended to be covered by the policy.

However, even if, as the majority holds, the policy certificate must be read alone and the proposals may not be considered, I believe that the record contains the " 'high level' " of proof necessary to show mutual mistake and warrant reformation of the contract (*Chimart Assocs. v Paul*, 66 NY2d 570, 574). Indeed, in my view, the record could not be clearer as to what the parties intended the policy to cover and the inadvertent failure of the policy to reflect that intention. Such inadvertent omission of an agreed-upon term may be viewed as a variation of a typographical or "scrivener's error" that warrants reformation (*see, e.g., Nash v Kornblum*, 12 NY2d 42; *Baby Togs v Harold Trimming Co.*, 67 AD2d 868; *Prudential Ins. Co. v S. S. Am. Lancer*, 686 F Supp 469, *affd* 870 F2d 867).

In the instant case, the evidence at trial revealed the precise

nature of the error, established the substance of the parties' actual agreement and identified "what was agreed upon that is not contained in the challenged" contract (*Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 29-30, *lv denied in part and dismissed in part* 80 NY2d 1005). In fact, although Metro-North's Director of Insurance noticed the omission upon receipt of the policy, he did not bring it to anyone's attention; at the same time, he directed the claims department to file only claims relating to flagmen and inspection personnel with Lloyd's, while other claims were to be filed with National Union. Tellingly, Metro-North did not file a claim with Lloyd's for coverage of the underlying injury here; until this action, all claims for employees other than flagmen and inspection personnel had been filed with National Union. Under these circumstances, where the parties' intent is so clear, Metro-North should not be permitted to benefit from the error and the Lloyd's policy should not be found to provide coverage for any employees other than flagmen and inspection personnel.