**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

CHAD BARRY BARNES,
     *Plaintiff-Appellant*,


v.


SEA HAWAII RAFTING, LLC; KRIS
HENRY; JOHN DOES 1–20; MARY
DOES 1–20; DOE CORPORATIONS 1–
20; DOE PARTNERSHIPS 1–20; DOE
ASSOCIATES 1–20; DOE
GOVERNMENTAL AGENCIES 1–20;
OTHER ENTITIES 1–20, In Personam;
M/V TEHANI; KRISTIN KIMO HENRY,
Debtor in U.S. Bankruptcy Court,
District of Hawaii - Chapter 13
Bankruptcy Case # 14-01475 (re:
doc no. 142)  also known as Kris
Henry; DANE S. FIELD, Trustee of the
bankruptcy estate of Sea Hawaii
Rafting, LLC,
     *Defendants-Appellees.*

</td>
<td>

No. 16-15023

D.C. No.
1:13-cv-00002-
ACK-RLP


ORDER AND
AMENDED
OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, Senior District Judge, Presiding

Argued and Submitted June 16, 2017
Honolulu, Hawaii

Filed March 28, 2018
Amended April 19, 2018

Before:  Raymond C. Fisher, Richard A. Paez, and
Jacqueline H. Nguyen, Circuit Judges.

Order;
Opinion by Judge Nguyen

## SUMMARY[*]

### Maritime Law

The panel reversed the district court's dismissal of a seaman's claims in admiralty against a vessel in rem, issued a writ of mandamus to the district court to award the seaman maintenance, denied a motion to dismiss the appeal as moot, and remanded the case to the district court.

The seaman was injured when the vessel on which he was working exploded.  He sued the vessel in rem, and he sued the company that owned the vessel and the company's owner and manager in personam, seeking to enforce his seaman's lien against the vessel.

The panel held that it had jurisdiction under 28 U.S.C. § 1292(a)(3) to review the district court's interlocutory order dismissing the seaman's claims against the vessel because the order affected the seaman's substantive rights.  The panel concluded that it lacked jurisdiction to review the district

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

court's denial of summary judgment as to a maintenance amount, but it treated the notice of appeal as a mandamus petition.

The panel held that the district court erred in staying the action when the vessel owner declared bankruptcy and in dismissing the seaman's claims against the vessel for lack of in rem jurisdiction. The panel concluded that the district court obtained jurisdiction over the vessel when the seaman filed a verified complaint and the defendants appeared generally and litigated without contesting in rem jurisdiction, and the seaman's failure to verify his amended complaint did not divest the district court of in rem jurisdiction. The district court did not lose in rem jurisdiction while the vessel remained in its constructive custody, and the court's control over the vessel, once obtained, was exclusive. The vessel owner's later-filed bankruptcy petition did not divest the district court of in rem jurisdiction. Moreover, the automatic bankruptcy stay did not affect the seaman's maritime lien against the vessel, and the bankruptcy court had no authority to dispose of the lien through the application of bankruptcy law.

The panel denied the bankruptcy trustee's motion to dismiss the appeal as moot after the trustee, with the bankruptcy court's approval, sold the vessel purportedly free and clear of the seaman's maritime lien.

The panel held that the district court erred by denying the seaman's maintenance requests in full. The panel held that when a seaman establishes his entitlement to maintenance and provides some evidence of his actual living expenses, the burden shifts to the vessel's owner to produce evidence that the seaman's actual costs were unreasonable. Whether or not the vessel's owner produces such evidence, the seaman is entitled to a maintenance award in the amount of

his actual costs up to the reasonable rate in his locality.  The panel issued a writ of mandamus to the district court to award the seaman maintenance for his undisputed actual and reasonable expenses of $34 per day, subject to a potential increase after trial.

## COUNSEL

Jay Lawrence Friedheim (argued), Admiralty Advocates, Honolulu, Hawaii; John C. Gibson, Honolulu, Hawaii; for Plaintiff-Appellant.

Simon Klevansky (argued), Alika L. Piper, and Nicole D. Stucki, Klevansky Piper LLP, Honolulu, Hawaii, for Defendants-Appellees Dane S. Field, Sea Hawaii Rafting LLC, and M/V Tehani.

Lisa M. Volquardsen, Kailua-Kona, Hawaii, for Defendant-Appellee Kris Henry.

**ORDER**

The Opinion filed on March 28, 2018, is amended as follows:

1. On page 9, line 11, of the slip opinion, the word <Honolulu> is replaced with <his locality> and, at the end of the sentence, a footnote with the following text is added:

> <Barnes originally presented the district court with evidence of reasonable costs in Honolulu but subsequently clarified that Kailua-Kona was the relevant locality.>

The remaining footnotes are renumbered accordingly.

2. On page 40, line 8, of the slip opinion, the word <Honolulu> is replaced with <his locality> enclosed in regular brackets.

No new petitions for rehearing or rehearing en banc will be accepted.

---

**OPINION**

NGUYEN, Circuit Judge:

Chad Barnes is a seaman who was injured when the boat on which he was working, the M/V Tehani, exploded. During his recovery, Barnes received some monetary assistance from either Sea Hawaii Rafting, LLC ("SHR"), which owned the Tehani, or Kris Henry, SHR's owner and manager, but those payments soon stopped. Seeking the

ancient maritime remedy of maintenance and cure,[1] among other relief, Barnes sued the Tehani in rem and SHR and Henry in personam to enforce his seaman's lien against the vessel. Although admiralty courts normally handle such matters expeditiously, that did not happen here for two reasons.

First, the district court rejected Barnes's pretrial requests to enforce SHR's obligation to pay maintenance and cure. The court concluded that Barnes was entitled to maintenance and cure and had demonstrated his actual maintenance expenses. Nonetheless, despite undisputed evidence that Barnes was entitled to at least some of his actual expenses, the district court declined to award Barnes any maintenance until trial.

Second, when SHR declared bankruptcy after fifteen months of litigation and shortly before trial, the district court stayed Barnes's action. The district court concluded that the Tehani was an asset of the debtor's estate and that the automatic bankruptcy stay barred proceedings to enforce Barnes's maritime lien against the vessel. The bankruptcy court partially lifted the bankruptcy stay to allow the district court to evaluate Barnes's claims against SHR but expressly prohibited the district court from issuing any ruling that would affect the maritime lien's status.

Ultimately, the district court dismissed Barnes's claims against the Tehani. The court reasoned that it lacked in rem jurisdiction because, even though Barnes verified his

---

[1] "Maintenance" is a seaman's "right . . . to food and lodging if he falls ill or becomes injured while in the service of the ship. 'Cure' is the right to necessary medical services." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-28 (5th ed. 2016) (footnote omitted).

original complaint, he failed to verify the amended complaint. Then, while Barnes's appeal was pending, the bankruptcy trustee—with the bankruptcy court's approval— sold the Tehani purportedly free and clear of Barnes's maritime lien. The trustee subsequently moved to dismiss this appeal as moot.

We conclude that the district court erred by denying Barnes's maintenance requests in full, staying the action, and dismissing the Tehani. The district court obtained jurisdiction over the vessel Tehani when Barnes filed a verified complaint and the defendants appeared generally and litigated without contesting in rem jurisdiction. The district court did not lose in rem jurisdiction while the Tehani remained in its constructive custody. And the court's control over the vessel, once obtained, was exclusive. SHR's later-filed bankruptcy petition did not divest the district court of in rem jurisdiction. Moreover, the automatic bankruptcy stay did not affect Barnes's maritime lien against the Tehani, and the bankruptcy court had no authority to dispose of the lien through the application of bankruptcy law.

When, as here, a seaman establishes his entitlement to maintenance and provides some evidence of his actual living expenses, the burden shifts to the vessel's owner to produce evidence that the seaman's actual costs were unreasonable. Whether or not the vessel's owner provides such evidence, the seaman is entitled to a maintenance award in the amount of his actual costs up to the reasonable rate in his locality. Over three years after concluding that Barnes was entitled to maintenance and had sufficiently proven his actual costs, the district court has yet to award him any maintenance.

Accordingly, we deny the trustee's motion to dismiss, reverse the district court's dismissal of the Tehani, and issue a writ of mandamus to the district court to award Barnes

maintenance for his undisputed actual and reasonable expenses—$34 per day—subject to a potential increase after trial.

## I.

### A. Factual Background

Barnes worked for SHR for six years as a captain and crew member of the Tehani, a 25-foot rigid hull inflatable boat powered by twin outboard engines. Barnes took passengers from Honokohau Harbor on sightseeing and snorkeling trips along the Kona coast. Henry paid Barnes under the table with personal checks made out to "cash."

On July 3, 2012, Henry and Barnes were launching the Tehani for a night snorkeling trip. Henry was in his truck, towing the Tehani on an attached trailer, and Barnes was onboard the boat. Henry backed the trailer down the launch ramp until the vessel was in the water. When Barnes started the starboard engine, the Tehani exploded. The hatch struck Barnes on his back and head, propelling him into the ocean.

A Coast Guard investigation found that the explosion was caused by a fuel tank with a missing screw in the fuel tank sender. Fuel leaked into the bilge, where vapors accumulated and ignited when Barnes started the engine. The investigator concluded that the incident might have been avoided if Henry had installed the required flammable vapor detector and mechanical exhaust system. *See* 46 C.F.R. §§ 182.460, 182.480. The boat, which was insured, was subsequently repaired and returned to service.

Barnes was less fortunate. SHR lacked insurance to cover his medical expenses for physical, psychological, and neurological treatment. Barnes required approximately

12 staples to reattach parts of his scalp. Due to his head injuries, he can no longer drive a car or swim. He cannot afford rent and has been living on friends' couches. He receives approximately $300 per month in disability income from the State of Hawaii.**[2]**

## B. Litigation in the District and Bankruptcy Courts

On January 1, 2013, Barnes filed a verified complaint in admiralty against Henry, SHR, and the Tehani, claiming unseaworthiness, various theories of negligence, and intentional infliction of emotional distress. Barnes sought maintenance and cure, damages, and attorney's fees. The three defendants answered the complaint. Despite denying Barnes's allegation that the Tehani was subject to the district court's in rem jurisdiction, they did not move to dismiss the Tehani on that basis but instead proceeded to litigate the dispute.

Barnes moved for "summary judgment for payment of maintenance and cure," requesting that the district court order defendants to pay his "reasonable, actual costs of food and lodging" and medical costs since the date of his injury until he reached "maximum medical cure." The district court granted Barnes's motion in part. Noting that defendants did not dispute that Barnes was injured in the service of the Tehani, the district court ruled that Barnes was entitled to maintenance and cure and had not yet reached maximum cure. Applying the standard for determining a

---

**[2]** Barnes also received some assistance from Henry, but the parties dispute the exact amount. Barnes acknowledges that Henry paid him $500 to cover rent. It is unclear whether Henry made this payment in his personal capacity or on SHR's behalf.

maintenance rate from *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582 (5th Cir. 2001), the district court concluded that Barnes had shown his actual food and lodging costs but not the reasonable amount for such costs in his locality or his actual medical expenses. [3] The court therefore declined to award either maintenance or cure.

About four months after the district court's order, Henry volunteered to pay Barnes $962.83 per month towards maintenance but stopped after making two payments. Barnes moved two more times for summary judgment to determine a daily maintenance rate.[4] The district court denied both motions, concluding that there were triable issues of fact regarding reasonable food and lodging costs in Hawaii. The district court also denied Barnes's separate motion for summary judgment for payment of cure.

Meanwhile, Barnes filed an unverified amended complaint, adding a claim for negligence per se. In answering the amended complaint, defendants again stated a general denial of Barnes's allegation that the Tehani was subject to the district court's in rem jurisdiction but did not specifically challenge jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b) or otherwise bringing the issue to the district court's attention.

In yet another summary judgment motion, Barnes asked the district court to grant relief on his claims for

---

[3] Barnes originally presented the district court with evidence of reasonable costs in Honolulu but subsequently clarified that Kailua-Kona was the relevant locality.

[4] Barnes later moved a fourth time for summary judgment on the issue of a maintenance rate but withdrew the motion after the district court dismissed his claims against the Tehani.

unseaworthiness, negligence per se, and Jones Act negligence. Two weeks before the hearing on this motion and just over a month before the scheduled trial, SHR and Henry filed for bankruptcy relief—Henry for reorganization under Chapter 13 and SHR for dissolution under Chapter 7. Pursuant to the automatic bankruptcy stay, 11 U.S.C. § 362(a), the district court stayed the proceedings against all three defendants.

The bankruptcy court, recognizing the district court's "experience and expertise . . . in matters in admiralty," partially lifted the stay as to Henry and SHR so that the district court could "adjudicate the validity, extent, amount, and date of perfection of any maritime lien claim by . . . Barnes against the [Tehani]."[5] However, the bankruptcy court expressly kept the stay in place "to bar the enforcement of any maritime lien." The bankruptcy court expressed concern that the "limited assets" of SHR's estate did not warrant the bankruptcy trustee's "participat[ion] in extended or unlimited litigation in the District Court."[6]

After the bankruptcy court partially lifted the stay, the district court reopened the case. In a subsequent minute

---

[5] Initially, there was confusion as to which defendant—Henry or SHR—owned the Tehani. Defendants erroneously listed the Tehani as Henry's rather than SHR's asset in their bankruptcy cases. Under that misapprehension, the bankruptcy court first lifted only the stay in Henry's bankruptcy, though the order allowed the district court to "value to its conclusion the claim of [Barnes] arising from [the admiralty case]," which necessarily implicated Barnes's claim against SHR's property. When the Tehani's ownership was clarified, the district court refused to proceed further with SHR's bankruptcy stay still in place. The bankruptcy court then lifted that stay as well.

[6] The Tehani and its trailer, appraised to be worth $38,500 and $2,500, respectively, were the estate's only substantial assets.

order addressing Barnes's outstanding summary judgment motions, the district court noted—sua sponte and parenthetically—that "it lack[ed] jurisdiction over the [Tehani], as [the vessel] was never arrested." Thereafter, Barnes attempted several times to verify the amended complaint—a verified complaint being a precondition of arrest, *see* Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(2)(a)—though Barnes made no attempt to arrest the Tehani. The trustee in SHR's bankruptcy case conceded to the district court that defendants' "pre-petition answer subjected [them] to the [district court's] jurisdiction." The trustee acknowledged the district court's previous statement that it lacked in rem jurisdiction but did not seek dismissal on that ground. Rather, the trustee argued that Barnes had lost any maritime lien he had in the vessel through his failure to verify the amended complaint and invoke the district court's in rem jurisdiction. Henry also did not seek dismissal for lack of in rem jurisdiction.[7]

The district court nonetheless dismissed the Tehani for lack of in rem jurisdiction and, in the same order, granted Barnes partial summary judgment on his claim for negligence per se. In dismissing the Tehani, the district court reasoned that Barnes's unverified amended complaint— filed after more than 15 months of litigation—superseded the original verified complaint; Barnes's attempts to verify the amended complaint while the bankruptcy stay was in effect were invalid; verification of the amended complaint was

---

[7] Less than a week before the hearing on Barnes's motion for summary judgment on his claims for unseaworthiness, negligence per se, and Jones Act negligence, Henry in a supplemental memorandum requested dismissal of the action for lack of *subject matter* jurisdiction based on Barnes's failure to verify the amended complaint. He cited no authority for this proposition, and we know of none.

necessary for his maritime lien against the Tehani to attach; and Barnes's failure to verify the amended complaint deprived the district court of in rem jurisdiction.

Barnes appeals the district court's orders dismissing the Tehani and denying his request to set a maintenance amount. While his appeal was pending, the bankruptcy court approved, and SHR's bankruptcy trustee executed, the sale of the Tehani and its trailer to Henry's new company, Aloha Ocean Excursions, LLC, for $35,000.

## II.

### Jurisdiction

We begin by considering our own jurisdiction as to each issue raised on appeal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction . . . should be considered when fairly in doubt." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006))); *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 769–70 (9th Cir. 2007) ("[A]ppellate courts must examine each claim or issue presented separately to determine their jurisdiction on interlocutory appeal . . . ." (citing *Will v. Hallock*, 546 U.S. 345, 349 (2006))). The district court, sitting in admiralty, had jurisdiction under 28 U.S.C. § 1333(1). SHR's bankruptcy trustee asserts that if this appeal is not moot, we have appellate jurisdiction under 28 U.S.C. § 1291 to review the dismissal of the Tehani because "[a]n order of dismissal is a final order." But the district court dismissed only the Tehani. "'[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or *the rights and liabilities of fewer than all the parties*' is not final" unless the district court determines there is no just reason for delay and enters judgment. *Hyan v. Hummer*, 825 F.3d 1043, 1046 (9th Cir. 2016) (per curiam) (quoting

Fed. R. Civ. P. 54(b)) (emphasis in *Hyan*). That did not happen here.**[8]** Thus, this appeal is interlocutory.

Barnes and Henry suggest 28 U.S.C. § 1292(a)(3) as the source of our jurisdiction, which permits appeals from "[i]nterlocutory decrees of . . . district courts . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." This means orders that decide "the merits of the controversies between [the parties]," because "'rights and liabilities' . . . are substantive in nature—not adjective, tactical, or procedural." *Rogers v. Alaska S.S. Co.*, 249 F.2d 646, 649 (9th Cir. 1957) (quoting *In re Wills Lines*, 227 F.2d 509, 510 (2d Cir. 1955)). In determining whether a ruling decides the merits, we consider "financial realities," *All Alaskan Seafoods, Inc. v. M/V Sea Producer*, 882 F.2d 425, 428 (9th Cir. 1989), as well as other "practical matter[s]," *Kesselring v. F/T Arctic Hero*, 30 F.3d 1123, 1125 (9th Cir. 1994).

In *Melwire Trading Co. v. M/V Cape Antibes*, we concluded that 28 U.S.C. § 1292(a)(3) applied to an order dismissing a vessel for lack of in rem jurisdiction. 811 F.2d 1271, 1273 (9th Cir. 1987). In concluding that we had jurisdiction, however, we construed "the actual basis for the district court's dismissal" to be "its conclusion that none of [the plaintiff's] claims gave rise to a maritime lien

---

**[8]** Barnes moved for leave to file an interlocutory appeal under 28 U.S.C. § 1292(a)(3) or (b). The district court, viewing its approval as unnecessary for an appeal pursuant to § 1292(a)(3), *see Seattle First Nat'l Bank v. Bluewater P'ship*, 772 F.2d 565, 569 (9th Cir. 1985), denied the motion as moot. Although we ultimately agree with the district court that we have appellate jurisdiction under § 1292(a)(3) to review the dismissal of the Tehani, the issue is close, and the better practice in that situation would be to make an alternative ruling under § 1292(b).

enforceable in an action in rem," a question that "involves the merits." *Id.* at 1273 n.1 (citing *The Resolute*, 168 U.S. 437, 440 (1897)). Here, there is no doubt that Barnes had a seaman's lien, and the Tehani's dismissal was due to Barnes's purported procedural shortcomings in invoking the district court's in rem jurisdiction. Because this type of dismissal is "not an adjudication upon the merits," *Neifeld v. Steinberg*, 438 F.2d 423, 432 (3d Cir. 1971); *cf. Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983) ("[A] dismissal for lack of *in personam* jurisdiction is not *res judicata* as to the merits of the claim."), it is not necessarily appealable.

The district court concluded that its dismissal order effectively "foreclose[d] the only forum in which Barnes may bring his admiralty claims against the Tehani." Thus, notwithstanding that the ruling was procedural, it affects Barnes's substantive rights and is the proper subject of an interlocutory appeal under 28 U.S.C. § 1292(a)(3). *See Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1013 n.2 (9th Cir. 1999) (holding that an order denying leave to amend was appealable under § 1292(a)(3) because it "effectively dismissed" the plaintiff's claims); *see also MS Tabea Schiffahrtsgesellschaft MBH & Co. v. Bd. of Comm'rs*, 636 F.3d 161, 165 (5th Cir. 2011) (holding that "dismiss[al] . . . for lack of subject matter jurisdiction . . . conclusively determined the parties' rights and liabilities").

We lack jurisdiction, however, to consider whether the district court should have awarded maintenance. The court's partial summary judgment that defendants are liable to Barnes for maintenance payments is not at issue. Defendants did not appeal that ruling, and the time to do so on an interlocutory basis expired long before Barnes filed his notice of appeal. *See* 28 U.S.C. § 2107(a) (providing a 30-

day deadline to appeal "any judgment, order or decree"). Rather, Barnes is attempting to appeal the district court's denial of summary judgment as to a maintenance amount. Except in limited circumstances not applicable here, the denial of summary judgment is not appealable. *See, e.g.*, *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016) (citing *Mueller v. Auker*, 576 F.3d 979, 987 (9th Cir. 2009)); *see also P.R. Ports Auth. v. Barge Katy-B*, 427 F.3d 93, 106–07 (1st Cir. 2005) (holding that § 1292(a)(3) permits interlocutory review of only the portion of an order determining the parties' rights and liabilities); *cf. EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 757 (9th Cir. 1991) (dismissing for lack of jurisdiction challenge to district court's failure to rule on sanctions request in otherwise appealable order granting preliminary injunction).

When appellate jurisdiction is lacking, "[w]e can . . . treat the notice of appeal as a petition for a writ of mandamus." *Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc). For reasons we will explain, we conclude that mandamus relief is warranted in these unique circumstances. First, however, we turn to the district court's dismissal of the Tehani for lack of in rem jurisdiction, which we review de novo. *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 858 (9th Cir. 2005).

## III.

## A. The District Court's In Rem Jurisdiction over the Tehani

To commence an action in rem against a vessel, the plaintiff must file a verified complaint that describes the vessel "with reasonable particularity" and states that the vessel "is within the district" or will be so "while the action is pending." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(2);

*see Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 637 (9th Cir. 2002). If the plaintiff meets these conditions, the district court must take the boat into custody—unless the plaintiff requests otherwise—by issuing an arrest warrant to be served by the marshal.**⁹** *See* Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(3)(a)–(b), E(3)(b).

"Once the district court issue[s] warrants for the arrest of the . . . vessels pursuant to Rule C, and the warrants [are] successfully served, 'jurisdiction [i]s complete.'" *F/V Jeanine Kathleen*, 424 F.3d at 858 (quoting *The Rio Grande*, 90 U.S. (23 Wall.) 458, 463 (1874)). However, "as with other forms of jurisdiction over the party, *see* Fed. R. Civ. P. 12(h)(1), a vessel may waive jurisdiction in rem by appearing in the action and failing to raise the defense of lack of jurisdiction over the party in a timely fashion." *United States v. Republic Marine, Inc.*, 829 F.2d 1399, 1402 (7th Cir. 1987); *see Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1107–11 (5th Cir. 1985); *see also Hapag-Lloyd A.G. v. U.S. Oil Trading LLC*, 814 F.3d 146, 153–54 (2d Cir. 2016) (noting "the many cases in which *in rem* jurisdiction has been held waived without seizure when the owner appears without contesting jurisdiction" (citing *Republic Marine* and *M/V Montmartre*)); *Porsche*

---

**⁹** Supplemental Admiralty and Maritime Claims Rule C(3)(a)(i) provides that the district court "*must* review the complaint and any supporting papers" and, if satisfactory, "the court *must* issue an order directing the clerk to issue a warrant for the arrest of the vessel." (Emphasis added.) The District of Hawaii requires admiralty plaintiffs to *apply* for this review and places the burden on the applicant "to ensure that the application has been reviewed and, upon approval, presented to the clerk for issuance of the appropriate order." D. Haw. Adm. R. E.3(e). Barnes does not challenge the local rule as being inconsistent with the federal rule, and it is unnecessary for us to consider any tension between them.

*Cars N.A., Inc. v. Porsche.net*, 302 F.3d 248, 256 (4th Cir. 2002) ("[I]n admiralty . . . cases, for years courts have held that objections to in rem jurisdiction may be waived."); *Farwest Steel Corp. v. Barge Sea Span 241*, 769 F.2d 620, 622 (9th Cir. 1985) ("[J]urisdiction to review an *in rem* decision [can be derived] from the existence of either consent or *in personam* jurisdiction over a shipowner whose other contacts with the forum satisfied 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *The Willamette*, 70 F. 874, 877–78 (9th Cir. 1895) (holding that challenge to in rem jurisdiction was waived where the shipowner appeared and answered the complaint).

Barnes's original complaint was verified and met the other prerequisites to invoke the district court's in rem jurisdiction. Barnes understandably found it advantageous not to seek the Tehani's arrest. He was unwilling to pay the associated costs,[10] which he estimated would be approximately $30,000; there was no risk that the vessel would leave the district; and, Barnes asserts, "allowing

---

[10] A party seeking to arrest a vessel must deposit sufficient funds to cover for at least 10 days the marshal's expenses, including dockage, keepers, maintenance, and insurance, and pay the marshal's ongoing expenses in advance until the vessel is released. *See* 28 U.S.C. § 1921; D. Haw. Adm. R. E.11. There is a split of authority over whether seamen are exempt from prepayment of these fees. *See* 28 U.S.C. § 1916 ("In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor."); *compare Thielebeule v. M/S Nordsee Pilot*, 452 F.2d 1230, 1232 (2d Cir. 1971) (holding seamen are exempt from prepayment), *with P.R. Drydock & Marine Terminals, Inc. v. Motor Vessel Luisa Del Caribe*, 746 F.2d 93, 94 (1st Cir. 1984) (holding seamen are not exempt), *and Araya v. McLelland*, 525 F.2d 1194, 1196 (5th Cir. 1976) (same).

Henry to continue to operate his ocean excursion business with the vessel was the only possible way that [Henry] could generate enough money to pay Barnes [m]aintenance." Barnes's failure to arrest the Tehani benefitted defendants as well. Had he arrested the Tehani, defendants not only would have had to put up security to obtain the vessel's release, *see* Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(5)(a)–(b), but would have endured the inconvenience of being unable to use the vessel until its release was secured. *See* 4 Erastus Cornelius Benedict et al., *Benedict on Admiralty* § 2.15[C] (7th ed., rev. 2017).

When Barnes filed his verified complaint, the district court issued summonses for each of the defendants, including the Tehani. Four months after Henry and SHR were served, they and the Tehani answered the complaint without moving to dismiss for lack of in rem jurisdiction. The three defendants then actively participated in the litigation—providing discovery, opposing two summary judgment motions and two motions for reconsideration of orders denying summary judgment, and participating in two settlement conferences—without challenging the court's in rem jurisdiction. By the time Barnes filed his unverified amended complaint, defendants had clearly waived any objection to in rem jurisdiction by litigating the merits of Barnes's claims for more than 15 months. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation."); *cf. Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (holding that personal jurisdiction defense, even though raised in the answer sufficiently to avoid waiver under Rule 12(h), was waived where "the defendants fully participated

in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction").

## B. Barnes's Failure to Verify the Amended Complaint Did Not Divest the Court of In Rem Jurisdiction

The district court concluded that it lacked in rem jurisdiction because Barnes failed to verify the amended complaint. It reasoned that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent," *Lacey v. Maricopa County*, 693 F.3d 896, 925 (9th Cir. 2012) (en banc) (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)), and that Barnes's "failure to verify [his amended] complaint deprived the district court of *in rem* jurisdiction." *Madeja*, 310 F.3d at 637 (citing *United States v. $84,740.00 U.S. Currency*, 900 F.2d 1402, 1405 (9th Cir. 1990)). Neither *Lacey* nor *Madeja* support the district court's conclusion.

While an amended complaint supersedes the original, it normally does so only with regard to the pleading's substance, not its procedural effect. For example, *Lacey* involved "the [former] law of this circuit that a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint." 693 F.3d at 925 (quoting *Forsyth*, 114 F.3d at 1474). *Lacey* overruled this "formalistic and harsh" rule, which was neither "prudent [n]or sufficiently justified." *Id.* at 927. Now, "claims dismissed with prejudice [or] without leave to amend [need not] be repled in a subsequent amended complaint to preserve them for appeal." *Id.* at 928. The procedural effect of the original complaint—preserving for appeal certain subsequently dismissed claims—survives its amendment. Relation back is another example. A timely-filed claim is not rendered untimely when included in an amended

complaint filed after the statute of limitations has passed. *See* Fed. R. Civ. P. 15(c).

In rem jurisdiction is no different. It is a "general principle" of admiralty law that in rem "jurisdiction, once vested, is not divested, although a state of things should arrive in which original jurisdiction could not be exercised." *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 85 (1992) (quoting *United States v. The Little Charles*, 26 F. Cas. 979, 982 (C.C.D. Va. 1818) (No. 15,612) (Marshall, C.J.)); *see Edlin v. M/V Truthseeker*, 69 F.3d 392, 393 (9th Cir. 1995) ("Although control of the res is required to *establish* jurisdiction, it is not required to *maintain* a court's jurisdiction."); *cf. J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139, 142 (9th Cir. 1995) (explaining that quasi in rem jurisdiction, "once obtained, will not be defeated by a change in circumstances"). Since Barnes's original, verified complaint established the court's in rem jurisdiction, his unverified amended complaint did not take it away.

"Unless a rule or statute *specifically states otherwise*, a pleading need not be verified or accompanied by an affidavit." Fed. R. Civ. P. 11(a) (emphasis added). Here, the relevant rule provides only that "the complaint" must be verified. *Id.*, Supp. Adm. & Mar. Cl. R. C(2). Supplemental Rule C says nothing about the necessity of verifying amended pleadings. Such a requirement would not serve its purpose, which is to provide procedural protections to the vessel's owner—whose property is arrested without prior notice or a hearing—in order "to eliminate any doubt as to the rule's constitutionality." *Id.*, Supp. Adm. & Mar. Cl. R. C, advisory committee's note to 1985 amendment; *see also Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1349–50 (5th Cir. Unit A Dec.

1981) ("[T]he verified complaint filed by a maritime lienor as well as the prayer for seizure constitute the 'process' that brings that entity into court. Together, the verified complaint and the warrant constitute 'notice,' and the shipmaster (or person in charge) knows of the arrest and is in a position to notify the owner.").

After the vessel is arrested, the owner is entitled to "a prompt post-seizure hearing at which he can attack the verified complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings up to that point." *Gen. G. L. Gillespie*, 663 F.2d at 1351; *see* Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(4)(f). Once the owner has appeared, whether due to the vessel's arrest or because the owner learned of the proceeding through some other means, no further procedural purpose is served by requiring the verification of amended pleadings. To the extent the verification provides evidentiary value, the original complaint "does not lose its character as the equivalent of an affidavit just because a later, amended complaint, is filed." *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).

*Madeja* did not involve an amended complaint or a situation in which the defendants had waived objections to in rem jurisdiction. Rather, it involved an original complaint that was inadequately verified and defendants that successfully objected to in rem jurisdiction. *See Madeja*, 310 F.3d at 637; *see also Madeja v. Olympic Packer, LLC*, 155 F. Supp. 2d 1183, 1211 (D. Haw. 2001). It is inapplicable here. The district court erred in dismissing the Tehani for lack of in rem jurisdiction.

## C. The Bankruptcy Court Lacked Jurisdiction to Dispose of the Maritime Lien

SHR's bankruptcy trustee argues that even if the district court erred, Barnes's claims are now moot because the bankruptcy court authorized the Tehani's sale to be free and clear of any liens. This argument assumes that the bankruptcy court had jurisdiction to dispose of Barnes's maritime lien. It did not.

### 1.

The automatic bankruptcy stay applies to "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). The district court concluded that Barnes's claims to enforce his maritime lien were subject to the bankruptcy stay. In *United States v. ZP Chandon*, we reversed a district court's similar ruling "that the automatic stay provisions of the Bankruptcy Act apply to [a maritime lien for] seamen's wages."[11] 889 F.2d 233, 238 (9th Cir. 1989).

Although *Chandon* involved a maritime lien for seaman's wages rather than for maintenance and cure, its reasoning applies equally to both. We "construe[d] Congress' omission of any reference to maritime law in [§] 362(a)(4) as evidence of its intention to limit the reach of that statute to land-based transactions where (1) a recording of a lien interest is required and (2) the creditor first in time is entitled to priority." *Id.* at 238.

---

[11] A seaman's right to unearned wages while injured or ill on a voyage is "part of the doctrine of 'maintenance and cure.'" *Day v. Am. Seafoods Co.*, 557 F.3d 1056, 1058 (9th Cir. 2009) (citing *Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1109 (9th Cir. 1996)).

The trustee would distinguish *Chandon* as involving a post-petition claim in a Chapter 11 reorganization case rather than the pre-petition claim in a Chapter 7 dissolution case at issue here. Those are not material differences. *Chandon* decided, broadly, "whether the enactment of the Bankruptcy Act and the Congressional grant of jurisdiction to the bankruptcy courts restricts the district court's jurisdiction in admiralty or maritime cases." *Id.* at 236. In answering that question in the negative, we reasoned that the automatic stay provision "does not expressly refer to *maritime* liens," which, when owed to seamen as a consequence of their service, "are 'sacred liens' entitled to protection 'as long as a plank of the ship remains.'" *Id.* at 238 (quoting *The John G. Stevens*, 170 U.S. 113, 119 (1898)).**[12]** We concluded that Congress would not have overruled this "sacred" principle of admiralty law in the Bankruptcy Act sub silentio.

Neither the timing of the bankruptcy petition relative to the maritime lien nor the nature of the bankruptcy proceeding—liquidation versus reorganization—factored into our decision. The trustee does not explain why they should. We therefore conclude that, under *Chandon*, the

---

**[12]** *The John G. Stevens* involved a maritime lien for tort damages from a negligent collision. 170 U.S. at 119. Although the discussion of "sacred [maritime] liens" was in the context of liens for seaman's wages, *id.*, liens for maintenance and cure are given a similarly high priority. *See Fredelos v. Merritt-Chapman & Scott Corp.*, 447 F.2d 435, 440 (5th Cir. 1971) (per curiam on rehearing) ("[T]he shipowner's liability [for maintenance and cure] is among 'the most pervasive' of all." (quoting *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943))). In both instances the reason for favoring a seaman's lien over all others "is that just as a seaman owes his first duty to his ship, so does she owe the same to him." *Id.* at 439.

bankruptcy stay did not apply to Barnes's efforts to enforce his maritime lien for maintenance and cure.

## 2.

The bankruptcy court lacked jurisdiction to adjudicate Barnes's maritime lien because the admiralty court had already obtained jurisdiction over the Tehani. "As between two courts of concurrent and co-ordinate jurisdiction, having like jurisdiction over the subject-matter in controversy, the court which first obtains jurisdiction is entitled to retain it without interference, and cannot be deprived of its right to do so because it may not have first obtained physical possession of the property in dispute." *Moran v. Sturges*, 154 U.S. 256, 283–84 (1894); *see also State Engr. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 809 (9th Cir. 2003) (discussing the "ancient and oft-repeated . . . doctrine of prior exclusive jurisdiction—that when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court" (quoting 14 Charles Alan Wright et al., *Federal Practice and Procedure* § 3631, at 8 (3d ed. 1998))).[13]

Here, the district court took constructive control of the Tehani in order to adjudicate Barnes's maritime lien at the time Barnes filed his verified complaint. SHR's bankruptcy

---

[13] There is an exception to prior exclusive jurisdiction that is inapplicable here: "where the jurisdiction [of the two courts over the res] is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction." *Harkin v. Brundage*, 276 U.S. 36, 43 (1928).

petition, filed nearly two years later, could not have vested the bankruptcy court with the same jurisdiction.

### 3.

Even if the bankruptcy court had in rem jurisdiction over the Tehani, it is an open question whether bankruptcy courts have "the effective ability to sell a vessel free and clear of maritime liens." 3B Benedict et al., *supra*, § 43 (citing Jonathan M. Landers, *The Shipowner Becomes a Bankrupt*, 39 U. Chi. L. Rev. 490, 500 (1972)). Nonetheless, two principles are well-established.

First, a maritime lien "accompanies the property into the hands of a bona fide purchaser. It can be executed and divested only by a proceeding *in rem*." *Vandewater v. Mills*, 60 U.S. 82, 89 (1856); *see In re World Imports Ltd.*, 820 F.3d 576, 583 (3d Cir.) ("[A maritime] lien attaches to the maritime property from the moment a debt arises, and adheres, even through changes in the property's ownership, until extinguished by operation of law."), *cert. denied sub nom. World Imports, Ltd. v. OEC Grp. N.Y.*, 137 S. Ct. 340 (2016); Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 9-2, at 588 (2d ed. 1975) ("The maritime lien can be 'executed' (which is the admiralty terminology for 'foreclosed') only by an admiralty court acting *in rem*."). The bankruptcy proceeding that purportedly discharged Barnes's maritime lien was in rem. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).

Second, a maritime lien cannot be extinguished except through the application of admiralty law. *See In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 93 (2d Cir. 2005) (Sotomayor, J.) ("Traditional admiralty principles suggest that only a federal admiralty court acting in rem has the jurisdiction to quiet title to a vessel conclusively by

extinguishing its maritime liens."); Eric D. Grayson, *Maritime Arrest and Rule C: A Historical Perspective*, 6 Mar. Law. 265, 271 (1981) ("It is a basic tenet of American jurisprudence that a maritime lien is enforceable only by in rem process and by a federal court sitting in admiralty.").

There are good reasons why a bankruptcy court, if it can release a maritime lien at all, should be required to do so pursuant to admiralty law. "The central bankruptcy scheme of pro rata distribution among creditors deprives secured creditors of immediate enforcement" and "is obviously at odds with the complex maritime system providing for priorities between various creditors and distinguishing between maritime and nonmaritime creditors." 3B Benedict et al., *supra*, § 1[a][9]. *See generally* 2 Benedict et al., *supra*, § 51 (discussing priority of liens). Maritime creditors have "secret liens," enforceable "without . . . formal or substantial documentation," which are "antithetical" to bankruptcy practice. 3B Benedict et al., *supra*, § 1[a][9]. *See generally* Gilmore & Black, *supra*, § 9-1, at 586–89 (discussing differences between land-based liens and maritime liens).

Other "unique aspects" of maritime liens make them ill-suited for resolution under bankruptcy law; for example, "seamen have traditionally been recognized by maritime courts as 'the wards of admiralty,' placing them in a preferred position. A seaman, after settling a claim . . . under the general maritime law, even when represented by an attorney, may later contend either that he was under-represented or that his rights were not completely explained to him." 29 James Wm. Moore et al., *Moore's Federal Practice* § 707.01[12] (3d ed. 2017). A seaman without counsel can claim "that he failed to understand what he was

doing when he accepted money in exchange for a release."
*Id.*

In *Millenium Seacarriers*, the Second Circuit held that a bankruptcy court could extinguish a maritime lien in an admiralty adversary proceeding to which the lienors voluntarily submitted. 419 F.3d at 95–96. Its decision turned on the lienors' consent to bankruptcy jurisdiction because "admiralty law itself allows individual lien claims to be expunged when lienors have submitted their claims to the equitable jurisdiction of another court." *Id.* Here, in contrast, the bankruptcy court applied bankruptcy law rather than admiralty law and Barnes did not submit voluntarily to the court's jurisdiction. Its attempt to dispose of his maritime lien was ineffectual.

## IV.

### Barnes's Entitlement to Maintenance

Having determined that the dismissal of the Tehani was improper, we need not reach Barnes's constitutional arguments. As for the merits of the district court's decision not to award maintenance, we lack appellate jurisdiction to review the orders denying summary judgment on that issue. We therefore consider whether mandamus relief is warranted. *See Miller*, 335 F.3d at 895 ("We can . . . treat the notice of appeal as a petition for a writ of mandamus . . . ."). "Whether we construe the appeal as a writ of mandamus depends on whether mandamus is itself justified." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th

Cir. 2010) (citing *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219–20 (9th Cir. 2000)).[14]

We review a party's entitlement to mandamus relief by weighing five factors:

> (1) whether the petitioner has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*United States v. U.S. Dist. Court*, 694 F.3d 1051, 1057 (9th Cir. 2012) (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977)). "These factors are not exhaustive," *In re Bundy*, 840 F.3d 1034, 1041 (9th Cir. 2016) (citing *In*

---

**[14]** Although Barnes did not indicate in his notice of appeal that he intended to appeal the district court's failure to set a maintenance rate, he conspicuously raised the issue in his opening brief. Henry, in his answering brief, also addressed the issue. The trustee, although noting the issue, declined to address it, as it was not material to his arguments. We conclude that defendants therefore had notice of the appeal of the maintenance rate issue and are not prejudiced by our consideration of it. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 691 (9th Cir. 1993) (concluding that the appellant's opening brief was "enough to demonstrate that the appellee had notice of the issue and did not suffer prejudice from the appellant's failure to specify the order in the notice of appeal" (citing *Meehan v. County of Los Angeles*, 856 F.2d 102, 105–06 (9th Cir. 1988))).

*re Cement Antitrust Litig.*, 688 F.2d 1297, 1301 (9th Cir. 1982)), and need not all be met in order to grant mandamus relief, *In re Benvin*, 791 F.3d 1096, 1103 (9th Cir. 2015) (per curiam) (citing *Bauman*, 557 F.2d at 655). Where a district court has erroneously concluded that triable issues of fact exist, or "has misconceived the burden of proof at trial," the district court's denial of summary judgment "implicates *Bauman* factors." *Ho ex rel. Ho v. S.F. Unified Sch. Dist.*, 147 F.3d 854, 861 (9th Cir. 1998).

## A. Other Adequate Means of Relief

Barnes could not have immediately appealed the district court's pretrial denials of summary judgment, which were not final orders.[15] *See Thomas*, 818 F.3d at 874. Furthermore, although Barnes did not request certification of an interlocutory appeal under 28 U.S.C. § 1292(b), we seriously doubt that the district court would have granted such a request given the evidentiary nature of its rulings. In the district court's view, Barnes was not entitled to maintenance due to evidentiary insufficiency rather than a controlling question of law as required by § 1292(b). Nor can Barnes seek review of the district court's orders denying summary judgment after a trial on the merits and final judgment. *See Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011). Thus, the first *Bauman* factor favors relief.

---

[15] Barnes sought permission to file an interlocutory appeal under § 1292(a)(3) from the district court's first order denying his motion for summary judgment to set a maintenance rate, but the district court denied this request after concluding that its ruling did not "finally determine . . . the parties' rights and liabilities."

## B. Damage or Prejudice Correctable on Appeal

The second *Bauman* factor, whether the petitioner will be damaged or prejudiced in a way not correctable on appeal, "is closely related to the first." *In re Henson*, 869 F.3d 1052, 1058 (9th Cir. 2017) (citing *Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1068 n.3 (9th Cir. 2007) (per curiam)). Without our intervention now, it is unclear whether there ever *will* be an appeal given Barnes's extremely limited resources—he is currently homeless. Moreover, even if there is an appeal, relief will come long after Barnes was entitled to maintenance to cover his basic living expenses. Four years have passed since Barnes initiated this litigation, and over three years have passed since the district court concluded that he was entitled to maintenance and had sufficiently demonstrated his actual expenses. Relief in a few more years will not redress his current need for assistance.

Although the timeliness of relief on appeal is an ever-present concern when a case proceeds to trial, this concern is of special import in the context of maintenance and cure. The shipowner's duty to pay maintenance and cure is virtually automatic, regardless of negligence by the seaman or lack of negligence by the shipowner. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994); *accord Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1044 (9th Cir. 1999). It "extends during the period when [the seaman] is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). There are three main reasons why courts impose this duty: "[t]he protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and

owners to protect the safety and health of seamen while in service; and maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service." *Id.* (quoting *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938)).

In line with these goals, admiralty procedure is designed to resolve a seaman's dispute quickly and flexibly. *See Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 25 (1960); *Farrell v. United States*, 336 U.S. 511, 516 (1949) ("[T]he seaman's right to maintenance and cure . . . is so inclusive as to be relatively simple, and can be understood and administered without technical considerations."); *Putnam v. Lower*, 236 F.2d 561, 568 (9th Cir. 1956) (observing that "admiralty courts are flexible in operation"); *cf. Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 423 (2009) ("[R]emedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures." (quoting *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 18 (1963))).

For example, a complaint in admiralty is required to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(2)(a). In addition, "the special needs of expedition that often arise in admiralty justify . . . the practice" of allowing the plaintiff to serve interrogatories with the complaint and requiring the defendant to answer the interrogatories when answering the complaint. *Id.* R. C(6), advisory committee's note to 2000 amendment. These rules favoring expediency

supplant inconsistent provisions in the Federal Rules of Civil Procedure. *See id.* R. A(2).

In light of admiralty's singular concern for the expeditious resolution of a seaman's claims for maintenance and cure, and Barnes's current need for financial assistance to meet his daily living expenses, the second *Bauman* factor favors mandamus relief.

## C. Clear Error

The third *Bauman* factor is whether the district court clearly erred as a matter of law. "Where a petition for mandamus raises an important issue of first impression, however, a petitioner need show only 'ordinary (as opposed to clear) error.'" *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999) (quoting *Calderon v. U.S. Dist. Court*, 134 F.3d 981, 983 (9th Cir. 1998)). Even if we have never squarely addressed an issue, a district court's ruling still can be clearly erroneous if contrary to an "unbroken string of authorities" from other jurisdictions. *See id.* at 1102.

### 1.

A question that has divided district courts in this circuit is the appropriate legal standard to adopt in a pretrial motion for maintenance and cure. *See Best v. Pasha Haw. Transp. Lines, LLC*, No. 06-634, 2008 WL 1968334, at *1 (D. Haw. May 6, 2008) ("District Courts in the Ninth Circuit have not been consistent in their treatment of motions for maintenance and cure. Some courts apply the summary judgment standard, even when the seaman is the moving party, while other courts have found that the summary judgment standard is inappropriate in such circumstances because it does not account for the flexible approach courts

should take in admiralty law cases and the deference courts should provide to seamen."). There is inherent tension between the law of admiralty, with its solicitude for seamen, and the Federal Rules of Civil Procedure.[16]

Under the Federal Rules, a plaintiff seeking summary judgment on a claim "must offer evidence sufficient to support a finding upon every element of his [or her] claim" other than elements admitted by the defendants. *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983) (quoting *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970)). There cannot be a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Rule 56 "authorizes summary judgment only where . . . it is quite clear what the truth is." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (internal quotation marks omitted) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). It is ordinarily a "heavy burden" for the plaintiff. *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014). "Reasonable doubts as to the existence of material factual issue are resolved against the moving part[y] and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Admiralty's approach, on the other hand, is "to do justice with slight regard to formal matters." *Cont'l Grain*, 364 U.S. at 25 (quoting *Point Landing, Inc. v. Ala. Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir. 1958)). The administration of maintenance should be "easy and ready," with "few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Vella v. Ford Motor Co.*,

---

[16] The district court here, while commenting on this tension, found it unnecessary to resolve.

421 U.S. 1, 4 (1975) (quoting *Farrell*, 336 U.S. at 516). Given these concerns, courts sometimes decline to resolve a pretrial motion for maintenance and cure under a summary judgment standard. *See, e.g.*, *Connors v. Iqueque U.S.L.L.C.*, No. 05-334, 2005 WL 2206922, at *2 (W.D. Wash. Aug. 25, 2005) ("[T]he Supreme Court's instructions to construe claims for maintenance and cure liberally in favor of seamen counsel against applying the rigid standards of Rule 56 to a pretrial motion to compel maintenance and cure.").[17]

Despite the tension between Rule 56 and admiralty procedure, the two standards are not incompatible. Although it is ordinarily difficult for a plaintiff to prevail on a motion for summary judgment, the seaman seeking maintenance has an easier task as a result of the breadth of the shipowner's duty. To establish his entitlement to maintenance, the seaman need only prove that he "bec[ame] ill or . . . injured while in the service of the ship." *Vella*, 421 U.S. at 3. The shipowner's duty to pay maintenance "arises irrespective of the absence of shipowner negligence and indeed irrespective of whether the illness or injury is suffered in the course of

---

[17] In addition, several courts have deviated from the summary judgment standard where a shipowner unilaterally terminates maintenance payments upon the belief that the seaman has reached maximum cure, leading the seaman to move to reinstate such payments. *See Robb v. Jantran, Inc.*, No. 15-162, 2016 WL 2986233, at *2 (N.D. Miss. May 6, 2016) (collecting cases from the Ninth Circuit); *Dean v. Fishing Co. of Alaska, Inc.*, 300 P.3d 815, 824 (Wash. 2013) (adopting the approach of district courts in the Ninth Circuit). These courts take the approach that absent a trial, the shipowner must reinstate payments "unless the shipowner can provide unequivocal evidence that the seaman has reached maximum cure." *Dean*, 300 P.3d at 824. As we are not faced with a motion for reinstatement or a dispute over whether Barnes has reached maximum cure, we do not pass on the appropriateness of the standard adopted by these courts.

the seaman's employment." *Id.* at 4. "[S]o broad is the shipowner's obligation" that even "negligence or acts short of culpable misconduct on the seaman's part will not relieve (the shipowner) of the responsibility." *Id.* (quoting *Aguilar*, 318 U.S. at 730–31).

In sum, the liberal admiralty policies and correspondingly rudimentary elements of a maintenance claim mean that, in practice, a seaman will have little difficulty demonstrating his entitlement to maintenance under a summary judgment standard. Accordingly, "[a] seaman's initial entitlement to maintenance and cure . . . can properly be resolved on summary judgment," *Dean*, 300 P.3d at 822, as evidenced by the "numerous federal district courts" to have done so, *id.* at 821 (citing cases); *see also Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1505–06 (9th Cir. 1995) (upholding the denial of summary judgment where there was a factual dispute over whether the "alleged accident aboard the [vessel] even occurred"), *abrogated on other grounds by Atlantic Sounding*; *Robb*, 2016 WL 2986233, at *2 (collecting cases and adopting the approach of courts that construe pretrial requests for maintenance and cure under a summary judgment standard).**[18]**

---

**[18]** The Supreme Court's statement that "ambiguities or doubts . . . are resolved in favor of the seaman," *Vaughan*, 369 U.S. at 532, concerned the seaman's entitlement to maintenance at trial, not at summary judgment. Because the summary judgment standard is compatible with a seaman's claim for maintenance, we see no reason to modify the summary judgment standard in this way. Any such modification would run contrary to the stated purpose of the 1966 integration of admiralty and civil rules. *See* 14A Wright et al., § 3671.4 ("[I]n view of the 1966 integration of admiralty and civil rules, procedure in admiralty . . . should be the same as in cases in law and equity unless

The summary judgment standard is also capable of governing disputes over the amount of maintenance. The burden-shifting framework we adopt is a familiar mode of analysis at the summary judgment stage in other contexts, *see, e.g.*, *Hardie v. Nat'l Collegiate Athletic Ass'n*, 876 F.3d 312, 323–24 (9th Cir. 2017) (affirming grant of summary judgment where there was no genuine issue of material fact at each step of the disparate-impact analysis), and has been successfully employed by district courts in this circuit to determine a maintenance amount, *see, e.g.*, *Sabow v. Am. Seafoods Co.*, 188 F. Supp. 3d 1036, 1044–45 (W.D. Wash. 2016).

We recognize that the denial of summary judgment as to a maintenance amount could delay the seaman's recovery of maintenance that is owed to him and thereby undermine the remedy's "easy and ready administration." *Vella*, 421 U.S. at 4. This problem, however, can be mitigated in two ways. First, as we explain, a seaman who demonstrates his entitlement to maintenance and actual expenses need not wait until trial to receive the portion of those expenses to which he is undisputedly entitled. *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—*including an item of damages or other relief*—that is not genuinely in dispute and treating the fact as established in the case." (emphasis added)). Second, a district court may on its own or at the seaman's request sever the issue of maintenance and hold an expedited trial on that claim under Federal Rule of Civil Procedure 42(b). *See Tate v. Am. Tugs, Inc.*, 634 F.2d 869, 871 (5th Cir. Unit A

a strong policy or statute prevents this uniformity of treatment." (quoting *United States v. Article Consisting of 216 Cartoned Bottles, More or Less, Sudden Change*, 288 F. Supp. 29, 32 (E.D.N.Y. 1968))).

Jan. 1981) ("[The seaman] may . . . ask for severance of the maintenance claim and an expedited trial of it by the court." (citing *Caulfield v. AC&D Marine, Inc.*, 633 F.2d 1129, 1133 (5th Cir. Unit A Jan. 1981))).

In light of these safeguards, we conclude that the summary judgment standard properly governs a pretrial request to set a maintenance amount. *See* 1B Benedict et al., *supra*, § 51 ("The amount to which an injured or ill seaman is entitled [for maintenance and cure] . . . [may] be determined by the court on a motion for summary judgment where the 'extraneous materials' in support of the motion 'establish with certainty that there is no triable issue of fact.'"). We now turn to the application of that standard.

**2.**

In evaluating the amount of maintenance to award, the district court stated that it was applying the standard articulated by the Fifth Circuit in *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582 (5th Cir. 2001). Under *Hall*, a seaman-plaintiff seeking maintenance "is entitled to the reasonable cost of food and lodging, provided he has incurred the expense." 242 F.3d at 587. The plaintiff's actual expenses are presumptively reasonable, subject to an adjustment upwards or downwards if the court determines that the actual costs were more or less than an objectively reasonable amount. *See id.* at 590.

The burden is on the plaintiff to "present evidence to the court that is sufficient to provide an evidentiary basis for the court to estimate his actual costs." *Id.* In light of admiralty's goal of an expedient remedy for the seaman, his evidentiary burden "is 'feather light,' and a court may award reasonable expenses, even if the precise amount of actual expenses is not conclusively proved." *Id.* at 588 (quoting *Yelverton v.*

*Mobile Labs., Inc.*, 782 F.2d 555, 558 (5th Cir. 1986)). "If the plaintiff presents no evidence of actual expenses," however, "the plaintiff may not recover maintenance." *Id.* at 590. But if the plaintiff *does* provide evidence of actual expenses, "the court must determine the maintenance award" by "compar[ing] the seaman's actual expenses to reasonable expenses," and awarding the lower amount unless "the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging." *Id.* Thus, a thrifty seaman will normally be entitled to his actual expenses.

*Hall* explained how the district court should calculate a reasonable maintenance rate:

> In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of a vessel, and maintenance rates awarded in other cases for seamen in the same region.

*Id.* Importantly, "[a] seaman *need not present evidence* of the reasonable rate; a court may take judicial notice of the prevailing rate in the district."[19] *Id.*

---

[19] From the 1940s until the 1980s, the reasonable rate was generally held by courts to be eight dollars per day, despite the deteriorating value of that fixed amount over four decades. *See Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 946 (9th Cir. 1986). More recently, "courts have allowed [a] seaman to prove that higher costs of living require a higher maintenance amount." 8 Benedict et al., *supra*, § 10.02[C][4].

Courts and commentators roundly cite the Fifth Circuit's approach. *E.g.*, *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 365 (1st Cir. 2016) ("In this circuit, as in numerous sister circuits, the norm is to award an injured seaman maintenance and cure payments in the amount of his actual living expenses." (citing, inter alia, *Hall*)); 2 Robert Force & Martin J. Norris, *The Law of Seamen* § 26:27 (5th ed. 2016) (citing *Hall* with approval); 1B Benedict et al., *supra*, § 51 (setting forth *Hall* standard). Some describe it as a burden-shifting test under which the plaintiff "must bring forth prima facie evidence of his expenses," and, if he does, "[t]he burden of rebuttal then shifts to the defendant." 1 Schoenbaum, *supra*, § 6-32; *accord Incandela v. Am. Dredging Co.*, 659 F.2d 11, 14 (2d Cir. 1981) (holding that "a seaman makes out a prima facie case on the maintenance rate question when he proves the actual living expenditures which he found it necessary to incur during his convalescence," at which point "the burden shift[s] to the defendant to demonstrate that plaintiff's actual expenditures were excessive, in light of any realistic alternatives for room and board available to him in [the locality]"). We agree with *Hall* and expressly adopt *Incandela*'s burden-shifting framework for determining a maintenance amount.

**3.**

In ruling on Barnes's first motion for summary judgment, the district court found that he established both his entitlement to maintenance and his actual living expenses of $68 per day. Under *Hall*, a decision which has gained widespread acceptance outside this circuit and which the district court purported to apply, defendants had the burden of showing that $68 per day was *un*reasonable.

Defendants submitted no such evidence. Therefore, Barnes carried his summary judgment burden of establishing

that no genuine issue of material fact existed as to the reasonableness of his actual expenses. The district court should have awarded Barnes $68 per day unless it independently determined that that amount was unreasonable. *See Hall*, 242 F.3d at 590. Instead, the district court faulted Barnes for "fail[ing] . . . to provide . . . evidence regarding the current costs of food and lodging in [his locality] such that the Court can make a determination as to the reasonable costs in the area." This was clear error. *See Incandela*, 659 F.2d at 14 ("[T]o require every injured seaman seeking a court award for maintenance to go to the expense of putting on expert witnesses before he will be permitted to recover more than a fixed nominal maintenance rate would be to place an unfair burden on those whom the idea of maintenance was designed to assist.").

After the district court denied Barnes's motion for reconsideration, Barnes moved for summary judgment a second time. This time, defendants produced evidence that the reasonable cost of living in Barnes's locality was between $24 and $34 per day. Barnes, in contrast, produced evidence that the reasonable rate was between $43 and $61 per day. Citing *Glynn*, the district court concluded that the dispute over a reasonable daily maintenance rate precluded summary judgment. The court subsequently denied Barnes's motion for reconsideration, in which he requested maintenance at the rate of $24 per day—the lowest end of the range of reasonable rates offered by defendants—subject to modification after trial. Barnes repeated this request in his third motion for summary judgment, but the district court again denied it.

Like the denial of Barnes's first motion for summary judgment, these later denials of summary judgment constituted clear error. The district court reasoned that a

genuine issue of fact existed as to whether Barnes was entitled to maintenance at a rate of at least $24 per day because Barnes did not agree that $24 per day was reasonable.   But *Hall*, which provided the applicable substantive standard at summary judgment, held that "seamen are entitled to maintenance in the amount of their actual expenses on food and lodging *up to* the reasonable amount for their locality."   242 F.3d at 590 (emphasis added).   Regardless of whether $24 per day is ultimately proven to be reasonable at trial, there is no dispute that the reasonable rate is at least $24 per day.   Because Barnes is entitled to maintenance up to the reasonable rate, there is no dispute, let alone a genuine dispute, that he is entitled to maintenance at a rate of at least $24 per day.

In fact, Barnes is entitled to more than $24 per day.   As we have explained, defendants had the burden of demonstrating that his actual expenses were unreasonable. Defendants produced evidence that the reasonable daily rate for living expenses in Barnes's locality ranges from $24 per day to $34 per day.   Thus, defendants produced *no* evidence disputing the reasonableness of a maintenance award in the amount of $34 per day; to the contrary, the evidence produced by defendants supported the reasonableness of a $34 daily rate.   Accordingly, there is no genuine issue of fact as to Barnes's entitlement to maintenance in the amount of at least $34 per day.[20]

---

[20] To the extent that Barnes's specific requests for maintenance of $24 per day pending trial amounted to a form of concession, courts are "not bound by a party's concession as to the meaning of the law." *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1289 n.4 (9th Cir. 2017) (quoting *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc)).

*Glynn* is not to the contrary.  There, we recognized that summary judgment would have been premature because the district court concluded "there was a material issue of fact about whether Glynn was *entitled* to maintenance and cure." 57 F.3d at 1505 (emphasis added).  In particular, we explained that "whether Glynn's alleged accident aboard the [vessel] even occurred was a disputed issue of fact that had to be determined before Glynn could prevail on his claim." *Id.* at 1505–06.  *Glynn* is inapposite when, as here, it is undisputed that a seaman is entitled to maintenance and has sufficiently demonstrated his actual expenses.

Finally, we note that under the district court's view of *Hall*, an injured seaman would be faced with a Hobson's choice:  He could either stipulate to the reasonableness of the rate supported by the shipowner's evidence and thereby give up the possibility of proving a higher rate at trial, or he could decline to do so, in which case he would not receive payments for basic living expenses until after trial.  Such a predicament is antithetical to the admiralty policies underlying the seaman's right to maintenance and cure.  We cannot countenance a rule under which "uncertainty would displace the essential certainty of protection against the ravages of illness and injury that encourages seamen to undertake their hazardous calling." *Vella*, 421 U.S. at 4.

Because the district court clearly erred in applying *Hall*, the third *Bauman* factor favors granting the writ.

## D.  Remaining Factors

The remaining factors also support mandamus relief. Barnes moved the district court to set a maintenance rate on four separate occasions.  The district court denied the first three of these motions and deemed the fourth withdrawn in light of the bankruptcy stay.  Thus, the district court's error

was "oft-repeated." And lastly, because we had not yet considered the application of *Hall* or expressly adopted the *Incandela* burden-shifting framework for determining a maintenance amount, the questions involved are ones of first impression.

## V.

### Conclusion

Barnes, having undertaken a dangerous profession at sea, was entitled to reimbursement from the Tehani for his living and medical expenses while recovering from his injuries in its service. More than that, he was entitled to be reimbursed quickly. "The adequate protection of an injured or ill seaman against suffering and want requires more than the assurance that he will receive payments at some time in the indefinite future. Payments must be promptly made, at a time contemporaneous to the illness or injury." *Crooks v. United States*, 459 F.2d 631, 634–35 (9th Cir. 1972) (quoting *Vaughan*, 369 U.S. at 537–38 (Stewart, J., dissenting on other grounds)). Yet after more than five years, Barnes is still waiting. We urge the district court to move quickly upon remand.

The trustee's motion to dismiss the appeal against the Tehani is denied. We reverse the district court's order dismissing the Tehani for lack of jurisdiction. We issue a writ of mandamus directing the district court to award

Barnes maintenance at the rate of $34 per day, subject to a potential upward modification after trial.[21]

**REVERSED in part and REMANDED; MANDAMUS GRANTED.**

---

[21] It appears that prior to this appeal, the district court was on track to sever the issue of maintenance and cure and set it for trial. We commend this approach and encourage the court and the parties to continue to pursue it expeditiously on remand.